## CHARLES DEVLIN, APPELLANT, *v.* JAMES B. BRADY, RESPONDENT.

*Note—Consideration, Influence with Officer to procure Unlawful Act.*

A note, the consideration of which is influence with a corporation officer to procure him, in violation of law and of his duty, to pay a demand before, by law, it could legally be paid, is against public policy, and, in the hands of the party, or any one cognizant of its character, cannot be collected.

*Jas. T. Brady* for Appellant.

*J. H. Reynolds* for Respondent.

DAVIES, CH.J.—This action is brought against the maker to recover the amount of a promissory note for $3,000, dated May 12, 1857. From the facts developed on the trial, it appeared that the note had its inception under the following circumstances: The Defendant had a contract with the corporation of New York, through the street department, for regulating and grading Forty-sixth street. The work was completed, and there was due upon the contract $23,000 or $24,000, but by the terms of the ordinances of the corporation, the same could not be paid to the contractor by the Street Commissioner until after the expiration of sixty days from the final completion of the work. The note in controversy was made payable to the order of the maker, and endorsed by one George Mountjoy and the Plaintiff. Brady testified, on the trial, that the note was given to Mountjoy for the purpose and intent that he should use his influence with the Street Commissioner, so that he (Brady) could get his money (the amount of the contract) before the expiration of the sixty days. That Mountjoy, before the note was given, sought interviews with Brady, and stated to him that he (Brady) could never get his matter through the street department, then under the charge of Joseph S. Taylor, Street Commissioner, without his (Mountjoy's) influence, and for that he wanted to be paid. That soon after this interview with Mountjoy, Brady had an interview with Devlin, the Plaintiff, and it is apparent, if Brady's statement be true, that

Devlin must have had previous knowledge of the substance of what had passed between Brady and Mountjoy, for Brady testified : " Devlin said to me, ' why don't you fix that matter with Mountjoy ? ' I said that I had no confidence in the man ; he said that I might have confidence in him; that he had influence with the department, and without that influence I could not get my money, and he knew it ; " that soon after Brady had another interview with Mountjoy, who said to him, " Have you thought any more about that matter ? " To which witness Brady replied, " Yes ; " that Mountjoy then said " he would fix it all, and get my money in sixty days for three thousand dollars ; " that Mountjoy insisted upon the money, which the witness could not spare ; that he then applied to Devlin to endorse his note, or get a note discounted for him at the bank, both of which he refused ; that Devlin asked him if it was in relation to that matter of Mountjoy, to which he replied " Yes ; " that soon after he gave to Mountjoy the note in suit, and the day after he gave the note he met Devlin in the park, and he asked him how he got along with his business with Mountjoy, and he told him (Devlin) that he had given a note to Mountjoy, and Devlin said it was all right. It appeared that two days after the date of the note, Devlin advanced to Mountjoy upon it the sum of $2,560, and subsequently paid him the balance; that Devlin, having the note in his possession, and not advanced by him, applied to the Bowery Bank for its discount, and it was left with the president of the bank, Devlin endorsing the same, with the understanding that he might draw against it, which he did on the 14th of May, 1867, by the check to the order of Mountjoy for $2,650 ; that the note was discounted on the 16th of June, and proceeds passed to Devlin's credit, and protested, and on the 17th of July Devlin took it up by his check for the amount thereof and protest. Devlin testified upon the trial that he did not know what the note was given for, or the purpose for which it was given, and that he never saw Brady about the note before it was given. On the trial, Devlin was asked if he had not sworn on a previous trial that he had discounted this note for Joseph S. Taylor, the Street Commissioner,

and he stated that he did not know that that question was asked him; that he did not remember stating that the note was discounted for Taylor. A witness was then called who testified that he was present at the previous trial, heard Devlin's testimony, and that he took minutes of it, and that he had testified then "that he had discounted the note for Taylor."

Attempts were made to impeach Devlin, and also to sustain him. The Court, among other things, charged the jury that if they believed Brady, " you cannot doubt that Devlin ·knew all about the note when he took it; while, if you believe Devlin, he knew nothing about it." There can be no just ground of complaint to this portion of the charge. There was a direct conflict of testimony between Brady and Devlin, and ·it was a question solely for the jury to determine which was to be believed. If Devlin's version of the transaction was the true one, then the case was clearly that of a bonâ fide holder purchasing a note before due, and paying a valuable consideration therefor. If such were the facts, then he was entitled to recover.

There was no exception taken to that portion of the charge wherein the judge told the jury that it was immaterial whether the consideration of the note was illegal, or whether it was without consideration; in either case the Plaintiff could not recover if he had notice of the illegality or want of consideration at the time he received it. If the jury gave credence to the version of the transaction as given by Brady, and we are to assume that they did by their verdict, then Devlin stood in no better position in reference to the note than Mountjoy himself, laying out of view the subsequent transactions with the Bowery Bank, which will be hereafter considered. Assuming that this suit was brought by Mountjoy, can it be for a moment contended that he could recover ? The consideration of the note, upon the state of facts we are bound by the verdict of the jury to assume to be true, was that Mountjoy could and would, and undertook, in consideration of this note, to use his influence with Taylor the Street Commissioner to violate the corporate ordinances, and induce him to pay Brady the sum of $23,000 or $24,000 before he was legally

18

entitled to receive the same. It is too well settled to need the citation of an authority, that a recovery could not be had upon a note, by the party to the transaction, given under such circumstances. If there be any doubt it is conclusively settled by authority (2 Kent's Com. 466 ; Nichols *v.* Mudgett, 32 Verm. 546 ; Meacham *v.* Dow, ibid. 731 ; Sharp *v.* Wright, 35 Barb. 236 ; Wall *v.* Charlick, N. Y. Leg. Obs. July, 1850, p. 230 ; Harris *v.* Roof's Ex'rs, 10 Barb. 489 ; Rose *v.* Truax, 21 Barb. 361 ; Gray *v.* Hook, 4 Coms. 449). It is a recognized and firmly established maxim in the law that ex turpi contractu actio non oritur ; and no person, so far back as the feudal ages, was permitted by law to stipulate for iniquity (Fitz. Ab., tit. Obligation, pl. 13). It would seem, therefore, that Mountjoy could not have maintained any action against Brady upon this note, and the judge correctly refused to charge the jury that the agreement alleged in the answer and established by the testimony was not illegal.

It remains to consider whether Devlin acquired any better or greater rights in the note than those of Mountjoy. The jury have found that Devlin knew of the consideration for which the note was given—nay, even advised the making of the arrangement with Mountjoy ; and there is ground for the inference that Mountjoy was used but as the instrument of Taylor, and that Devlin, in fact, discounted the note for Taylor. If this be so, then, with the knowledge of Devlin, this note was made, and the proceeds were to be used to induce Taylor to violate his duty as a public officer, by paying to Brady the amount of his contract before it was legally due. If this be the correct theory, it is needless to say that Devlin could not receive back money paid for such a purpose. On the assumption, therefore, that Devlin had never parted with the note, upon the facts found by the jury he could not have recovered upon the note, standing in no better position than Mountjoy himself. It remains to be considered whether his condition was improved by the transfer to and the discount of the note by the Bowery Bank, and this question is sharply presented by the second and third requests made to the Court to charge, and which were refused, and an exception taken. They are in these words :

" 2. That if the Bowery Bank became the holders of the note before maturity, and for value, and in good faith, the Plaintiff is entitled to stand in the shoes of the bank and entitled to recover upon the note, although he knew the consideration of the note at the time it was transferred to the bank."

" 3. If Devlin procured the note to be discounted for Mountjoy, at the Bowery Bank, and the bank took it in good faith and for value before maturity, Devlin is entitled to recover on it in the same manner as the bank, although he knew at the time of the original transfer to the bank that the consideration of the note was as is alleged by Brady."

Both these requests assume the knowledge of Devlin of the illegality of the note, and that it was given for the purpose as stated by Brady. It is not perceived how Devlin's dealings with the Bowery Bank, in respect to this note, gave him any better or greater title to it than he possessed before it was delivered to the bank. He procured the money from the bank on the strength of his endorsements, and when the note was dishonored, he returned the amount so received, with the fee of protest of the note. Such payment discharged his legal liability to the bank, but gave him no greater rights, as against the other parties on the note, than he had before. Conceding, as we may, that the bank might have collected the note, or that any one subrogated to the rights of the bank might also have done so, it does not follow that Devlin could. In what sense was he subrogated to any rights of the bank ? The payment by Devlin of the money which he borrowed of the bank, on the credit of this note, and his endorsement thereof, remitted him to his original rights upon the note. Such payment cancelled his endorsement and all liability to the bank, and left the note in his hands, precisely as if he had never parted with it. The Court did not err, therefore, in refusing to charge as requested.

The notice under the Code was sufficiently broad to embrace all the questions put to Brady touching the illegal or void consideration of the note, and the knowledge of the Plaintiff, before said note came into his possession, of the nature of said considerations. To establish that the considerations of the note were

illegal or void, it was the first step to show what the considerations were, and then all the circumstances tending to their illegality. There was no error in admitting the questions put to the witness Brady. They all pointed directly to the matters indicated in the notice, in reference to which he was to be examined.

We do not perceive any error in any of the rulings at the Circuit, and consequently the judgment must be affirmed.

All affirm, except HUNT, J., and PORTER, J., who were for reversal.

Affirmed.

JOEL TIFFANY,
State Reporter.