JAMES H. LIVINGSTON v. CARROLL S. PAGE.

May Term, 1902.

Present: MUNSON, START, WATSON, STAFFORD and HASELTON, JJ.

Opinion filed August 21, 1902.

*Contract for support of candidate for office.*

A contract for the support and influence of a newspaper to secure the nomination for office is against public policy, and void.

GENERAL ASSUMPSIT. Pleas, the general issue and offset. Trial by jury at the December Term, 1901, Bennington County, *Rowell,* J., presiding. Judgment for the defendant on verdict ordered. The plaintiff excepted.

*H. H. Powers* and *Barber & Darling* for the plaintiff.

The defense invoking the doctrine of public policy is always an ungracious one, and is never made out unless all other defenses fail. It "sounds at all times very ill in the mouth of the defendant." *Holman* v. *Johnson,* Cow. 343; *Richmond* v. *R. R. Co.,* 26 Ia. 191; *Richardson* v. *Mellish,* 2 Bing. 229; *Barrett* v. *Corden,* 65 Vt. 431.

*Nichols* v. *Mudgett,* 32 Vt. 546, and *Powers* v. *Skinner,* 34 Vt. 274, are unlike this case. The contract here was to end at the nominating convention. Gov. Page testified that he wanted the plaintiff's assistance in securing delegates to the convention favorable to him. Caucuses are voluntary gatherings, neither recognized or regulated by law, therefore public oplicy cannot be involved in their makeup or management.

And the contract is in fact innocent, and Gov. Page declares its purpose to be to "disseminate correct political literature in southwestern Vermont." The publication in the Reformer of March 30, 1900 (sent to the plaintiff by the defendant), demonstrates the innocent character of the contract.

*R. W. Hulburd* and *Young & Young* for the defendant.

The contract claimed by the plaintiff is a corrupt one. He in fact says "I sold my influence as a public educator and I am suing for what I claim to be the purchase money." He sues for "retainer" and for influence exerted in a popular election, which influence he says he would not have exerted but for hope and expectation of reward. Such a contract should not be enforced by our courts. *Nichols* v. *Mudgett,* 32 Vt. 546; *Powers* v. *Skinner,* 34 Vt. 274; *Robertson* v. *Robinson,* 65 Ala. 610; *Gaston* v. *Drake,* 14 Nev. 175; *Swayze* v. *Hall,* 3 Halstead 54; *Liness* v. *Hesing,* 44 Ill. 113.

MUNSON, J. At the close of the plaintiff's evidence, the defendant moved that a verdict be directed in his favor, on the ground that the contract claimed by the plaintiff was void, as against public policy. The court held the contract void for

the reason assigned, and directed a verdict accordingly. The case is here upon the plaintiff's exception to this holding.

The plaintiff called the defendant as a witness. The evidence consisted of certain correspondence had by the parties; and the testimony of the parties as to the circumstances in which the letters were written, the meaning that was attached to the language used, the matters enclosed for publication by one party and the services rendered by the other, and subsequent transactions bearing upon their understanding of the relations they had sustained.

The defendant claimed that no contract with the plaintiff was in fact consummated, and that the only contract ever contemplated was one for the publication of extracts from other papers at a legitimate charge for the space actually taken. The plaintiff did not claim to recover on this ground, but claimed to recover a reasonable compensation for the support and influence of his paper and his services as its editor.

The plaintiff was a democrat, publishing a democratic paper of independent proclivities. The defendant was a republican, seeking a nomination to Congress from a republican convention. It appeared from the plaintiff's testimony that he considered defendant's proposal an application for the use and influence of his paper, in the nature of a retainer; that he accepted it with the understanding that his paper and his services as editor would be at the command of the defendant during the campaign, to be settled for at its close; that he was to do all he could to influence the choice of delegates and secure the defendant's nomination; that original matter was within the scope of his contract, and that his editorials were written in that view; that he supported defendant because of this contract and the money he was to get out of it; that he expected to receive a larger compensation if defendant was nominated than he otherwise would; that he tried to conceal his relations

with the defendant from the public, and understood that the defendant was trying to do the same; that he took this course because it would make his efforts in influencing voters in defendant's behalf more successful.

The case of *Nichols* v. *Mudgett,* 32 Vt. 546, decided by this court in 1860, is one of the few cases bearing upon this subject. The plaintiff in that case was a candidate for the office of town representative and a creditor of the defendant. The defendant's party affiliations were such as would naturally lead him to vote for the opposing candidate. Conversations were had which resulted in a mutual understanding that the defendant should use his influence in favor of the plaintiff's election, and that, if the plaintiff was successful, the defendant's indebtedness should be treated as paid. Induced by this agreement, the defendant supported the plaintiff's candidacy until his election was declared. There was no agreement that defendant should vote for the plaintiff unless it was implied in the above understanding. He voted for the plaintiff, however, and did so because of the understanding. The suit was for the recovery of the indebtedness referred to, and the defendant claimed that it had been satisfied. The court considered that there was a sale of the defendant's influence and vote, held the agreement void, and gave judgment for the plaintiff.

The agreement in that case involved both the defendant's vote and his influence upon the votes of others, but the court's discussion of the subject does not leave much doubt as to what its conclusion would have been if the undertaking had been confined to the latter service. Certainly no distinction could properly be made between the two. But that contract had reference to the votes to be cast at an election; and the plaintiff contends that, inasmuch as caucuses and conventions are not creations of the law, contracts for services in influencing the

choice of delegates and the action of a convention cannot be considered against public policy.

In *Liness* v. *Hesing,* 44 Ill. 113, 92 Am. Dec. 153, the contract was for services of this character. It is suggested that there may have been a law in that state regulating primaries, but there is no intimation of one in the opinion, and we have found none in the examination we have been able to make. There, the plaintiff sent the defendant twenty dollars, with a request that he use his influence to get plaintiff nominated for a certain office, and a direction to call upon him for twenty more if he got the nomination. The defendant kept the twenty dollars, and aided the plaintiff's opponent. The suit was to recover this money, but the defendant had judgment. The decision was announced by Justice Lawrence, who characterized the transaction as "an attempt to influence, by monied considerations, the action of the defendant in a matter where every person should be governed solely by a regard for the public welfare."

In *Strasburger* v. *Burk,* 13 Am. Law Reg. (N. S.) 607, decided by the city court of Baltimore, the defendant was the keeper of a lager beer saloon, and agreed to give his political influence and furnish beer and cigars to secure a caucus nomination for the plaintiff's father. The gratuitous furnishing of food or liquor to secure votes at an election was prohibited by the code, but the only statutory recognition of primary elections was a provision for the preservation of order. The court considered that in applying the principles of public policy no distinction could be made between voluntary meetings of this character and elections ordained by law. Mr. McCrary adopts the conclusions of this opinion in his work on Elections, and applies the doctrine to the sale of influence as well as the sale of votes. Mr. Redfield, in commenting upon the same opinion in the American Law Register, N. S. Vol. 13, p. 610, says

that the invalidity of contracts designed to control the freedom of elections results from the principles of the common law, and that those relating to caucuses cannot be made an exception on the ground that such meetings are not recognized by the statute.

We cannot doubt the correctness of this conclusion. The rule would largely fail of its purpose if not so applied. When the voters are unevenly divided into two parties, the nomination of the stronger organization is usually equivalent to an election. And when party action is less decisive, the subsequent efforts of the voters are ordinarily confined to a selection from the candidates regularly presented. The individual voter of a large electorate can seldom give an effective expression to a choice that is not in line with the action of some party convention. To secure a free and exact expression of the sovereign will, there must be a proper selection of candidates, as well as an honest election. If the choice of delegates and the action of the nominating convention are improperly determined, the election ballots will fail to express the real judgment of the voters.

It is not claimed in argument, and no ground occurs to us upon which it could be claimed, that this contract was any the less obnoxious to the law because the purchased influence was to be exerted through the columns of the plaintiff's paper. A newspaper is understood to present the views of some one connected with its management or views deemed consistent with some settled policy, and has a patronage and influence which are due to that understanding. As long as the editorial column is relied upon as a public teacher and adviser, there can be no more dangerous deception than that resulting from the secret purchase of its favor.

We hold that the contract testified to and relied upon by the plaintiff is contrary to public policy, and therefore void.

*Judgment affirmed.*

NOTE. Since the delivery of the above opinion, we have seen *Fitch v. DeYoung*, 66 Cal. 339, where it was held, upon views similar to those expressed in concluding the opinion, that an article charging a publisher with selling the support and advocacy of his paper for money, is libellous.　　　　　　　　　　　　　　　　　　　　　　　　　L. M.