Agnes Harter, Appellant, v. The Peoples Bank of Buffalo, Respondent.

Bertha Harter, Appellant, v. The Peoples Bank of Buffalo, Respondent.

Herbert A. Ehrhardt, Appellant, v. The Peoples Bank of Buffalo, Respondent.

Lydia D. Ehrhardt, Appellant, v. The Peoples Bank of Buffalo, Respondent.

Fourth Department, June 28, 1927.

Bills and notes — negotiable bonds — action to replevin bonds stolen from plaintiff and sold to defendant — evidence shows manager of branch of defendant was guilty of bad faith in buying bonds — error to set aside verdict to that effect — burden on defendant to show bona fides — reacquisition by defendant of bonds after sale to innocent purchasers did not give defendant rights of purchaser.

These actions were brought to replevin certain negotiable bonds. It appears that the bonds were stolen from the respective plaintiffs and thereafter were purchased before maturity by the defendant and subsequently sold by it to several purchasers and that when it was learned that the bonds had been stolen they were repurchased by the defendant. The verdict of the jury to the effect that the defendant exercised bad faith in acquiring the bonds illegally should not have been set aside and judgment directed for the defendant, since it appears that the bonds were acquired by the manager of a branch bank of the defendant from a person formerly a saloon keeper and at the time the proprietor of a so-called soft drink establishment; that he stated to the manager that a friend of his living in Syracuse had the bonds and wished to dispose of them without his name appearing in the transaction, and that the reason why his friend desired to dispose of them was to obtain money to pay for two loads of liquor; that the bonds were handled by a local stockbroker and were sold on the New York Stock Exchange, but prior to the sale the manager of the branch bank paid his friend an amount nearly equal to the amount of the bonds and paid the balance after the sale was made. It also appears that the defendant's branch manager paid for the bonds in bills of large denominations and not by check, the usual course of procedure. Under all the circumstances, the verdict of the jury that the bonds were acquired in bad faith was fully supported by the evidence and should not have been set aside.

Since the bonds were stolen it was incumbent upon the defendant to show that it was a bona fide holder and if the defendant's manager had notice or knowledge that the transaction was unlawful, and if he did not act in good faith in the matter, his bad faith is imputable to the defendant.

The reacquisition by the defendant of the bonds from persons who bought them in good faith and for value does not give the defendant the rights of an innocent purchaser for value and relieve it of the bad faith exercised in the original purchase of the bonds.

Sears, J., dissents.

APPEAL by the plaintiff in each of the above-entitled actions from an order of the Supreme Court, made at the Erie Special Term and entered in the office of the clerk of the county of Erie on the 19th day of May, 1926, granting defendant's motion to serve an amended answer; also from an order entered in said clerk's office on the same day setting aside a verdict in favor of the plaintiff and directing judgment in favor of the defendant, and also from a judgment of the Supreme Court in favor of the defendant, entered in said clerk's office on the 28th day of June, 1926, pursuant to said order, setting aside the verdict and directing judgment.

*James F. Martin,* for the plaintiffs Agnes Harter and Bertha Harter.

*Shire & Jellinek* [*James M. H. Wallace* and *Joseph Swart* of counsel], for the plaintiffs Herbert A. Ehrhardt and Lydia D. Ehrhardt.

*Wilbur B. Grandison* [*Philip A. Laing* of counsel], for the respondent.

CLARK, J.   The above-named plaintiffs appeal from judgments in favor of defendant in each of the above-entitled actions; also from orders permitting defendant to serve amended answers in each case, and from orders directing verdicts and judgments to be entered in favor of defendant in each of said actions, and from orders setting aside the verdict, to the effect that defendant acted in bad faith in the transactions with reference to the negotiation of the bonds in question.

The Harter actions were tried, but it was stipulated that as to the Ehrhardt cases they would abide the result of the Harter cases.

The actions are in replevin to recover certain negotiable bonds now in possession of defendant.   In the Agnes Harter case the plaintiff claims to be the owner of six $1,000 bonds that were stolen from her, and which are now in the possession of defendant, which it unlawfully refuses to deliver to the owner.   In the Bertha Harter case the allegations are the same excepting the claim is that as to her, eight $1,000 bonds and one $500 bond are involved.

In the Herbert A. Ehrhardt case two $500 bonds are involved, and in the Lydia D. Ehrhardt case two $500 bonds are involved, with similar allegations of ownership in the respective plaintiffs, that the bonds were stolen, and that defendant unlawfully refuses to deliver them to the plaintiff after demand.

The defendant in each case alleges that it is the holder of the

bonds referred to in the complaint and became such before maturity and in due course and for value, and without notice of any defect in title; that after it obtained the bonds it sold them through a broker and that subsequent sales were made, and that thereafter the bonds again came into the possession of defendant by purchase, and that it thereby acquired the title of all the prior purchasers of said bonds.

The evidence showed that in the Harter actions which were tried the bonds referred to in their respective complaints were owned by said plaintiffs; that they kept them in the safety vaults of a storage company in Chicago; that the bonds were stolen from said vaults in October, 1923, and that on or about the 31st day of October, 1923, said bonds came into the possession of one McGirr, a resident of Buffalo, from whom defendant obtained them.

Defendant is a National banking institution at Buffalo, and it has a branch called the Niagara branch which at the time in question was in charge of one Hausle as manager.

McGirr formerly conducted a saloon and at the time of his transactions with defendant regarding these bonds he ran a so-called soft drink establishment, and was a small depositor in defendant's bank, and was also a borrower there and a close friend of the manager.

A few days before the claimed conversion of these bonds McGirr called on defendant's manager of its Niagara branch, and told him that he had a friend who had some negotiable bonds which he desired to sell and obtain money to pay for two loads of liquor which were expected to arrive in Buffalo that night.

Hausle undertook to handle the bonds through a local stock broker; quotations were obtained and a few days later the bonds were sold on the New York Stock Exchange, but McGirr was paid by Hausle $15,000 on the transaction before the bonds were sold, and the balance a day or two later.

It was soon discovered that the bonds had been stolen, but that discovery was not made until after they had been sold to various parties in New York and vicinity, who had purchased them in good faith. When it was discovered that they were stolen bonds they were taken back by the various parties who had sold them and finally came back to defendant who paid the local broker the amount he had paid for them and the bonds are now in possession of defendant.

The primary question to be determined here is whether or not when defendant acting through the manager of its Niagara branch took these bonds from McGirr and paid him for them, it acted in good faith.

At the close of the evidence defendant asked the court to direct a verdict in its favor. Decision on that motion was withheld and the question of defendant's good faith was submitted to the jury. The verdict was against the defendant, the jury finding that it had acted in bad faith. Defendant then moved to set aside the verdict, and by consent of all parties the jury was discharged and decision was reserved on both motions. After that defendant asked leave to amend the answers to correspond with the proofs, and all of these matters were taken under advisement by the court, and finally an order was made granting defendant's motion to amend the answers, and orders were also made setting aside the verdict, and judgments in favor of defendant were directed in all the cases.

In the opinion handed down the learned trial court held that as to all the bonds which had been sold by Housman & Co., of New York, and repurchased by defendant, it acquired the rights of the assignors who were holders in due course.

The jury found that in its transactions with McGirr in obtaining these bonds defendant, acting through its Niagara manager, acted in bad faith, as above stated. Was that verdict justified by the evidence?

The manager had known McGirr several years and knew that he had been a saloon keeper, and that he had been convicted of a crime under the Federal law. He also knew that the bonds he was asked to purchase or negotiate were owned by a man in Syracuse whose name was not disclosed, and who McGirr told Hausle did not want his name known in the transaction. The manager also knew in advance that the moneys McGirr was seeking to raise on these bonds was to be used to finance a Federal transaction in violation of the law, his statement being that he could make from $100 to $500 out of the transaction. McGirr told him that he wanted the cash and in as large bills as possible, and Hausle obtained from the main office of defendant $15,000 in $100 bills, and handed them to McGirr, and later when the bonds were sold, paid him the balance.

After this matter was closed McGirr offered Hausle a case of whisky, which the latter testified he did not accept, but that if the offer had been of wine or beer he would have taken it.

These facts and circumstances, and others disclosed by the record, bore directly on the question of Hausle's good faith and honesty in the transaction, and were for the jury. (*American Surety Co.* v. *Palmer*, 210 App. Div. 867; 211 id. 172; revd. on other grounds, 240 N. Y. 63; *Karpas* v. *Bandler*, 218 App. Div. 418.)

Fourth Department, June, 1927.      [Vol. 221

The fact that a man from Syracuse with some $16,000 worth of negotiable bonds for sale left that city and came to Buffalo to dispose of them, and desired his name to be kept out of the transaction, in and of itself was sufficient to warn a prudent banker that the transaction was not straight, but Hausle made no effort to ascertain who the Syracuse man was or to see him, but willingly let the bank's funds go for the known purpose of using them to commit an illegal act. Under the circumstances the finding of bad faith by the jury was reasonable and justifiable, and should have been permitted to stand. It was more than negligence on the part of defendant's manager to permit the bank's money to be used to finance a questionable enterprise that involved the commission of a crime. It was gross carelessness, which was evidence of bad faith.

If McGirr had applied to the manager for a loan of $16,000 on his note, and told the manager that he was going to use the money to purchase dynamite for the purpose of destroying a building in which there were human beings, and the manager let him have the money with knowledge of the purpose for which it was to be used, how could it be said that he acted in good faith?

To constitute notice of an infirmity in an instrument sought to be negotiated the person to whom it was negotiated must have had actual knowledge of the infirmities or defects, or knowledge of such facts that his action in taking the instrument amounted to bad faith. (Neg. Inst. Law, § 95.)

The conduct of defendant's manager in this transaction was unusual for an experienced banker. It was not closed up by check as was usual, but by cash and in large denominations, so liquor could be handled and no names revealed by checks or book entries. All this evidence was for the jury, so that they could say whether or not Hausle acted in good faith and was a *bona fide* holder of the bonds. (*Canajoharie National Bank* v. *Diefendorf,* 123 N. Y. 191; *Kelso & Co.* v. *Ellis,* 224 id. 528.)

The bonds were stolen and it was incumbent on defendant to show that it was a *bona fide* holder (Neg. Inst. Law, § 98; *Fidelity-International Trust Co.* v. *Canalizo,* 211 App. Div. 325), and if defendant's manager had notice or knowledge that this transaction was unlawful, and if he did not act in good faith in the matter, his bad faith could be imputed to defendant. (*Baruch* v. *Buckley,* 167 App. Div. 113.)

The defendant urges, however, that in any event after the bonds had been sold by the brokers to various parties, who took them in good faith and for value, after the fact that they were stolen had been discovered, and the bonds subsequently came back to

defendant in the usual course of business, and it was obliged to pay back the money it had received from the brokers, it acquired good title on such repurchase.

Our opinion is to the contrary. If defendant took the bonds from McGirr in the first instance in bad faith, as found by the jury, when they were subsequently sold to various *bona fide* holders, and on the theft being discovered defendant was obliged to redeem them, it cannot " shelter itself " behind the rights of *bona fide* holders from whom it may have subsequently purchased them. (8 C. J. 466–468; Neg. Inst. Law, § 97; *Devlin* v. *Brady*, 36 N. Y. 531; *Woods* v. *Sizer*, 102 Misc. 453; *Olmstead* v. *Winsted Bank*, 32 Conn. 278; *Hatch* v. *Johnson Loan & Trust Co.*, 79 Fed. 828: *Dollarhide* v. *Hopkins*, 72 Ill. App. 509.)

The circumstances in connection with defendant's taking these bonds from McGirr were so unusual that a question of fact as to its good faith was presented, which was for the jury to pass upon and as the evidence of what took place between Hausle and McGirr when the bonds were negotiated was undisputed, the finding of the jury was justified, and was not against the weight of the evidence.

The learned trial court set aside the verdict and directed verdicts and judgments in favor of defendant, thus substituting its judgment in place of that of the jury on a plain question of fact. Under the circumstances we think if the verdict of the jury was to be set aside there should have been a new trial, and not judgments directed in favor of defendant.

Having reached this conclusion it is unnecessary to pass on the other questions raised by plaintiffs' exceptions and not already discussed.

The judgments and orders appealed from (except the order permitting amendments of the answers) should be reversed on the law and the facts, and new trials granted, with costs to appellants to abide the event.

The orders permitting amendments of the answers should be affirmed, without costs. (Civ. Prac. Act, § 283.)

All concur, except SEARS, J., who dissents and votes for affirmance. Present — CLARK, SEARS, CROUCH, TAYLOR and SAWYER, JJ.

In each case: Order permitting amendment of answer affirmed, without costs. Judgment and two orders reversed on the law and facts and a new trial granted, with costs to appellant to abide the event.