UNITED STATES FIDELITY AND GUARANTY COMPANY, Plaintiff, *v.* ALEXANDER LEON, Also Known as AL STELLEE, Defendant.

Municipal Court of New York, Borough of Manhattan, First District, November 22, 1937.

*Love & Horwitz,* for the plaintiff.

*Samuel M. Birnbaum,* for the defendant.

WINTER, J.  Plaintiff, subrogated to the rights of the owner of a $500 United States Liberty bond, has sued the defendant for its conversion.

The case was tried before the court and a jury of one man and five ladies, and was submitted on two issues of fact; as to the good faith of the defendant in receiving and selling the bond; and also as to whether the defendant had received and sold the bond as its purchaser for value or as an agent of the person who had stolen it.  At the conclusion of the testimony plaintiff moved for a directed verdict, and upon this motion the court reserved decision.

The Liberty bond which is the subject of this controversy disappeared from a cashier's cage of an out-of-town bank under circumstances leading to the conclusion that it was stolen.  It first appeared in New York city on the 16th day of May, 1935, when it was delivered in and out of a broker's office.

On the following day the defendant, who was a professional bookmaker at the tracks, was accosted by a gentleman whom he knew by the name of " Izzy " or " Big Moish " Kleinman or Kleinstein.  His acquaintance with this Mr. Kleinman was confined to gambling transactions in which the latter had accumulated a debt to defendant of $2,700.  Beyond this and Mr. Kleinman's frequent appearances at the tracks, defendant knew nothing of him, not even his residence.  He had never had any transactions with him involving bonds or securities.  On that day " Big Moish," according to defendant, handed to him the stolen bond and asked him to put it through his bank, claiming that he did not have a bank account.  The scene of this transaction was the corner of Broadway and Forty-second street.  Solely to accommodate this customer who owed him $2,700 in unpaid bets, the defendant innocently took this bond up to his bank at One Hundred and Sixteenth street, where he had an account under an alias.  After

some conversation with the manager there about whether the bond was all right and an inspection of a list of numbers on a sheet of paper, it was left there. Subsequently the defendant's account was credited with the proceeds of its redemption. Thereafter, or so defendant testified, he paid over to " Big Moish " the sum of $500 in cash out of his pocket. At any rate, no part of the proceeds was withdrawn from the bank. The bank statements showed that all of it remained on deposit there. The manager of the bank, however, denied that the defendant had expressed any curiosity about the history of the bond. The defendant's testimony was also further contradicted by his original answer, in which he swore that he had received the bond in payment of the gambling debt of Mr. Kleinman. There also was testimony from a witness, who identified himself as an agent of the Department of Justice, or a " G " man, that the defendant had told him that " Big Moish " had given him not only that bond but also three other stolen certificates on different occasions in payment of a $2,700 debt contracted in playing the horses.

Upon this testimony the jury returned a verdict in favor of the defendant, necessarily finding under the court's charge that the defendant had received and sold the bond in good faith, and that he had received it for collection only and not in payment of a gambling debt. Plaintiff thereupon moved to set aside the verdict and for a directed verdict in its favor.

In deciding plaintiff's motion it is not necessary to pass upon the merits of the verdict of this jury, but only upon the points of law; that the bond was not a negotiable instrument; and that even if it was, the defendant was liable for a conversion either as an agent of and a joint tort feasor with the thief, or in the alternative, if he took it in payment of a gambling debt, as a holder without value or legal consideration.

In my opinion the bond was a negotiable instrument under the definition given by sections 20 and 23 of the Negotiable Instruments Law of this State, although the due date might be accelerated by the government. (*Higgins* v. *Hocking Valley R. Co.*, 188 App. Div. 684; *First National Bank* v. *Blackman*, 249 N. Y. 322.) Nor do I agree with the plaintiff's contention that the bond became past due and non-negotiable when the government called the bond on April 15, 1935, for redemption. When its pleasure was exercised in that respect the government merely gave the holder the right to demand payment on the accelerated date and exonerated the government from the payment of interest thereafter. The legal effect of the call for redemption is not the same as if the bond had been originally framed as an obligation to pay absolutely on

a day fixed previously. " It stands, therefore, upon its statutory basis, as a bond redeemable at the Treasury on demand without interest after the maturity of the call, payable according to its original terms, and not overdue, in the commercial sense, till after the day of unconditional payment." (*Morgan* v. *United States of America*, 113 U. S. 476, at p. 499; 5 S. Ct. 588, 597; 28 L. Ed. 1044.) It follows, therefore, that, if the defendant and his predecessor in possession of the stolen bond came into such possession in good faith without notice of the theft and for a valuable consideration, he had the right to the possession as against the owner, and did not convert the bond by its sale. (Neg. Inst. Law, § 96; *Turnbull* v. *Bowyer*, 40 N. Y. 456.)

However, the burden of proof is upon the defendant if he is asserting title to this stolen bond to show that he is a *bona fide* holder, and, if he is asserting title in his predecessor, that the latter was a *bona fide* holder. (*Harter* v. *Peoples Bank of Buffalo*, 221 App. Div. 122; *Fidelity-International Trust Co.* v. *Canalizo*, 211 id. 325; *Ducasse* v. *Louchheim*, 232 id. 161.)

Defendant's original defense to this action and his admissions to the agent of the Department of Justice were that he received the bond for value in payment of a gambling debt. This would not have constituted him a *bona fide* holder for value. (*Peterson* v. *Fowler*, 162 App. Div. 21; *Singer* v. *Union Table & Spring Co., Inc.*, 151 Misc. 909.) Accordingly, on the trial he shifted his defense and there contended and testified that he received the bond as an accommodation for a gambling customer, for whom he deposited it in his bank and caused it to be sold, and to whom he transmitted the proceeds. He failed to show, however, that the customer was a *bona fide* holder for value, but, on the contrary, seemed to have the idea that the latter had feloniously come into its possession.

It is my opinion that this substituted version of the defendant's participation in the sale of the stolen bond does not exonerate him from the charge of conversion. He was not acting as a mere conduit, like his bank, or as a broker does in handling securities for their customers in the regular course of their business, or as a mere messenger. This transaction was abnormal for the defendant. As he testified, it was the first time that he had ever handled securities. If his incredible story is taken at its face value, he actually loaned the thief not only his own services but also his credit with his bank and its collecting facilities, all of which were not available to the thief or their use by him was too risky to be attempted except by proxy. By means of this defendant's aid and assistance the thief was enabled to discover with immunity

that no record of his theft was lodged with the collecting banks and to make off with its proceeds.

Under the facts presented by this case it seems to me that the defendant is a joint tort feasor with his customer, who presumably stole the bond, and a participator in the conversion that occurred when the bond was sold. He was acting as the agent of the latter, and is jointly liable with him for the damages suffered by the owner of the bond, whether he acted in good faith or not. (*Levy Brothers* v. *Karp*, 124 Misc. 901, 902; *Suzuki* v. *Small*, 243 N. Y. 590; *Brightson* v. *Claflin*, 225 id. 469.) As Mr. Justice RODENBECK well said in the first case cited: " These rules are founded upon a wise public policy and are designed to discourage larceny and the reckless sale of personal property."

The opinion of the Court of Appeals in *Gruntal* v. *United States Fidelity & Guaranty Co.* (254 N. Y. 468, 474), it seems to me, does not conflict with these views. In that case the court merely refused to extend the rule just cited to cases where stockbrokers in the usual course of their business accepted stolen certificates and sold them for their customers. This distinction may appear in this quotation: " A broker accepting such securities for disposition on behalf of a customer has little or no means of warning or inquiry such as indorsements or other relationships might suggest. The securities pass from hand to hand by delivery. He is a mere conduit between the seller and the purchaser, for which he receives a small commission. The purchaser is not liable for conversion, yet the broker, acting without any ground for suspicion, is said to be liable for the full value of the security which he has sold, although he has paid the purchase money over to the seller. The harshness of such a rule has been recognized by the courts in repudiating his liability. Public policy does not demand the extension of liability for innocent acts to such a case." (Citing *Pratt* v. *Higginson*, 230 Mass. 256.) And in this quotation: '' We are inclined to the view that the plaintiffs in this case are not liable for conversion, when, in behalf of an apparently honest customer with whom they had had past dealings, and without any cause whatever for suspicion, they sold for his account negotiable corporate bonds payable to bearer." (*Gruntal* v. *United States Fidelity & Guaranty Co.*, 254 N. Y. 468, 475.) It is impossible to find here any suggestion of a public policy limiting the liability of gamblers who are circulating stolen bonds for each other's accommodation in the gambling profession.

Plaintiff's motions to set aside the verdict of the jury and for a directed verdict in its favor are granted.