(47 App. Div. 53.)

## NATIONAL BANK OF REPUBLIC OF NEW YORK v. COX.

(Supreme Court, Appellate Division, First Department. January 19, 1900.)

1. MORTGAGES—VALIDITY—ILLEGALITY.

Defendant's son drew from a bank large sums of money on checks to which he had forged his employer's name. Defendant, at the instance of her son's friend, executed a mortgage on certain real estate to the bank, which gave a general release of its claims against the son. The testimony of the friend that there was an understanding between himself, the bank, and the employer that they would not appear against or prosecute the son for the forgeries, was denied by each of the other parties. Held, that the evidence was sufficient to justify the trial judge in finding that the mortgage was not given to compound a felony.

2. SAME—DURESS.

Defendant, impressed with the fear that her son, who had drawn money from a bank on forged checks, would be prosecuted criminally, and assured by the statements of her son's friend that such steps would be taken, and that they would result in imprisonment, executed a mortgage to the bank to secure the amount of the forgeries, believing that there was no other way to prevent the prosecution. Held, that the mortgage was executed under duress, and was voidable, though neither the bank nor its attorneys ever authorized the statements, or knew anything about them.

Appeal from special term.

Action by the National Bank of the Republic of New York against Martha L. Cox. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

John R. Dos Passos, for appellant.
George S. Hastings, for respondent.

RUMSEY, J. The action was brought to foreclose a mortgage alleged to have been made by the defendant, Martha L. Cox. Among other defenses, she set up that the mortgage was given by her to the plaintiff to compound a felony committed by her son, William R. Cox, and that she was induced to execute the mortgage by duress of threats of the imprisonment of her son. The learned justice before whom the case was tried ordered judgment for the plaintiff, thus overruling each of these defenses, and from that judgment this appeal is taken.

It is claimed on the part of Mrs. Cox that the findings of the court, not only as to the question of compounding the felony, but also as to duress, are against the weight of the evidence, and that upon the whole case the court should have found that the mortgage was extorted from her by threats of prosecution of her son for his criminal offense, and that he would be tried and imprisoned therefor, and upon the understanding that, if it was given, such prosecution would not be had. It is undisputed that, shortly before the mortgage was given the defendant's son, William R. Cox, who had been in the employ of one Minor, had forged checks on the plaintiff bank, using the name of Minor, and drawn money upon them to the amount of over $20,000. These forgeries had been discovered by Minor, who had sued the bank to recover the money

paid out on these checks, and the liability of the bank for that money was admitted. Cox had left the state, and his whereabouts were unknown either to Minor or the officers of the bank. At that juncture, one Fisher, who was the brother-in-law of Mrs. Cox, was requested by Cox to procure from his mother some security which would satisfy the claims of the bank and Minor against him on account of the forgeries. Fisher undertook to do so, and entered into communication with Minor, who, through his counsel, advised him that he relied upon his claim against the bank, and for that reason did not wish to enter into any negotiation. Fisher then approached an officer of the bank, who refused to deal with him, and sent him to its attorneys, and, after some negotiations between them, it was concluded that, if Mrs. Cox would make the mortgage in suit, and another mortgage to Mr. Minor, the bank would give to Cox a general release. While these negotiations were going on between the officers of the bank and Minor and Fisher, he had also been in communication with Mrs. Cox on the subject. She was the owner of the interest in real estate covered by these mortgages by a devise in the will of her husband's father, who was dead, and it was upon this property that the mortgages were to be given. Fisher says that it was understood between himself and the attorneys for the bank and Minor that, if this arrangement should be carried out, they would not appear against or prosecute Cox criminally for his forgeries. This is fully denied by each of the gentlemen with whom he claims the understanding to have been made, and it must be conceded that, so far as that claim is concerned, the learned justice at the equity term was fully justified in finding that there was no arrangement or understanding, express or implied, to which either the officers of the bank or Minor were parties, that Cox was not to be prosecuted if this mortgage was given, or that they would in any way refrain from taking proceedings against him criminally, if they saw fit to do so. That disposes of the defense that the mortgage was given to compound a felony, but in respect to the defense that the mortgage was given under duress the facts are material. It is quite true that there was no agreement or arrangement which reached the dignity of an understanding to the effect that the parties to this action would not prosecute Cox criminally if this mortgage was given, but it cannot be denied that the object had in view by Mrs. Cox was to prevent a criminal prosecution of her son, and it is quite apparent that this object was carried out. She had no other purpose in giving this mortgage than to attain this end. She was in no way liable for her son's defalcation, and there was no reason why she should assume any responsibility in that regard, except she desired to prevent his exposure, or his prosecution for his crimes. The situation was such that the criminal charge against him was undoubtedly well founded. That he might be sued by the bank to recover the money was also quite possible. Minor had already sued the bank, and, as was said in evidence by his counsel, "If she had not paid to the bank this money, the suit of Mr. Minor against the bank would have come to trial, and all the facts in regard to it

would have been published, and her son would certainly have been indicted, and sent to prison." The end which she desired was, as is quite evident, to prevent any such result, and it was of no importance to her whether that liability of indictment arose from the fact that Minor or the bank would prosecute, or whether, from the publishing of the facts, it would become necessary, in the interest of good order, that he should be prosecuted and convicted. She was, therefore, in this situation: Her son, whom she loved, had been guilty of this crime by which certain persons had been defrauded of a large amount of money. A suit to recover the money was pending, and must come to trial in the courts, by which the crime of her son would be disclosed; and it was quite likely that, as a result, he would be criminally prosecuted. As to all this there is no dispute. Neither is it disputed that at the time her son's crimes were disclosed to her she was a sick person, and confined to her bed, and that, as a result of these disclosures, she was made very much worse. She was extremely nervous, as might be expected, from the crime of her son, of whom she was exceedingly fond. She had no one with whom she could consult except Fisher, who had approached her on her son's behalf, to induce her to execute this mortgage. Fisher says that he told her that the attorney for the bank had threatened to prosecute her son for the crime, and put him in prison. That any such threats were made is denied by the attorney for the bank, but it does not necessarily follow from that that Mrs. Cox was not given to understand that such a result would follow from her refusal to give the mortgage. Fisher was not there as her friend, but as the friend of her son, and he was there for the express purpose of inducing her to execute this mortgage so as to prevent his prosecution. The conclusion is almost irresistible that he had stated to her, if not that the bank had threatened criminal proceedings, at least that criminal proceedings were likely to be taken, so that his statement tends to show that Mrs. Cox was given to understand that the execution of this mortgage was the only way to prevent her son from being punished for his crime. She says that these threats were conveyed to her by Fisher. Of course, she does not pretend that any such statements were made to her directly by the persons who represented either the bank or Minor, because she saw none of them. All that she claims is that she was impressed with the fear that such proceedings would be taken, and that there was no other way to prevent this than by giving the mortgage. Of course, her testimony need not be believed, unless, upon the whole case, it seems to be credible; and upon reading the case we have been forced to the conclusion that, not only was Mrs. Cox apprehensive of criminal proceedings against her son, but that she was overpowered by the positive statements that they would be taken, that they must necessarily result in his imprisonment, and that in no other way could they be avoided than by giving this mortgage; and when she says that she was induced to give it by these threats, and that she certainly would not have done so except for them, she tells the truth. There can be no doubt that such threats, addressed to

one who is called upon to make a contract for the purpose of procuring it, constitute duress, and that the contract thus procured is voidable. Eadie v. Slimmon, 26 N. Y. 9; Barry v. Brune, 8 Hun, 395, affirmed in 71 N. Y. 261.

But it is claimed that, though such threats may have been made by Fisher, and may have produced upon Mrs. Cox the effect she says they have, yet, as neither Minor nor the attorney for the bank participated in them, or, so far as appears, knew anything about them, they are not responsible for them, and the mortgage given is valid, though obtained through duress. The principle upon which contracts obtained by duress are avoided is that the party who was coerced to make them never in fact consented to do so, and that, therefore, the apparent contract does not exist in fact. If that be the case, and the contract has in fact no existence, it cannot be binding upon anybody. It is quite true that under certain circumstances the person who was coerced may be estopped from insisting that the contract was not valid, but, unless thus estopped, he is at liberty to assert the invalidity of the contract whenever he is called upon to perform it, even though the person thus calling upon him may have been a bona fide holder for value. The cases upon this head are so numerous that their citation is only necessary to establish it. Barry v. Brune, 8 Hun, 395, affirmed in 71 N. Y. 261; Loomis v. Ruck, 59 N. Y. 462; Barry v. Society, Id. 587; Huguenin v. Baseley, 14 Ves. 273; Bridgman v. Green, 2 Ves. Sr. 627; Sistare v. Heckscher, (Sup.) 18 N. Y. Supp. 475. There is no break, so far as I can discover, in the long line of cases upon this point. If, therefore, the duress was established, it followed that the defendant had shown a good defense, and the complaint should have been dismissed. A careful reading of this testimony has satisfied us that no other conclusion could be reached upon it than that the consent of Mrs. Cox to the execution of the mortgage was obtained by the threats of imprisonment which were made to her by Fisher, and that she would not have executed the mortgage except for them.

The learned justice therefore erred in concluding, as he did, that that defense was not established, and for this error the judgment must be reversed, and a new trial ordered, with costs to the appellants to abide the event. All concur.