Fidelity-International Trust Company, Respondent, *v.* Jorge A. Canalizo and Another, Defendants, Impleaded with Renee Hughes Canalizo, Appellant.

First Department, January 9, 1925.

**Bills and notes — action against maker and indorser — defense by indorser that indorsement was obtained by duress of maker, her husband — evidence — indorser should have been permitted to show facts constituting duress by husband — if indorsement was procured by duress, note was defective and plaintiff would have burden of showing that it is holder in due course — defense that note was given to compromise felony not sustained.**

In an action against the maker and the indorser of a promissory note to recover the face thereof, in which the indorser set up the defense that her indorsement was procured through the duress of her husband and of the plaintiff's officers and agents, it was error for the court to refuse to permit the indorser to show what took place between herself and her husband prior to the time she indorsed the note, though the plaintiff's officers or agents were not present at the time the alleged duress was practiced.

If the indorsement was procured by the duress of the plaintiff's husband, then the note was defective and the presumption which ordinarily obtains that the holder thereof is a holder in due course would be repelled, and the burden would then be upon the plaintiff to establish that it was a holder in due course.

The defense that the note was given to compromise a felony was not sustained.

Dowling, J., dissents.

Appeal by the defendant, Renee Hughes Canalizo, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 26th day of January, 1924, upon the verdict of a jury rendered by direction of the court, and also from an order entered in said clerk's office on the 8th day of February, 1924, denying said defendant's motion for a new trial made upon the minutes.

*Clinton M. Flint,* for the appellant.

*Leslie & Alden* [*Warren Leslie* of counsel], for the respondent.

Finch, J.:

The action is brought upon a promissory note made by the defendant Jorge A. Canalizo and indorsed by the appellant, who is the wife of the maker of the note, and also indorsed by the defendant Blumenkron. The latter was not served, and the maker of the note defaulted.

Upon the trial the appellant withdrew the denials contained in her answer and stated she would rely upon the following two affirmative defenses set up therein: *First.* " That in or about the months of October and November, 1920, while the defendant was

pregnant and in poor health, the defendant Jorge A. Canalizo, her husband, began pestering and importuning the defendant to indorse a note for him in order to prevent the plaintiff and its officers, agents and attorneys from instituting proceedings of a serious and criminal nature against said Jorge A. Canalizo, on the ground that he, the said Canalizo, had obtained monies from the plaintiff for a specific purpose and had then embezzled and stolen the said monies and used them for other than the agreed and designated purpose. * * * That it was represented to defendant, Renee H. Canalizo by the said Jorge A. Canalizo and by the plaintiff and its officers, agents and attorneys, that the only way to prevent the said Jorge A. Canalizo from a criminal prosecution and conviction, to the consequent injury and disgrace of this defendant and her children, was for this defendant to indorse the note in question in this action and another note of $100. That this defendant being put in fear, and greatly agitated in mind and body as a result of the threats of the plaintiff and its officers, agents and attorneys, against her will, wish and desire and solely because of duress and undue influence brought to bear upon her directly by the officers, agents and attorneys of the plaintiff, and through her husband and others, indorsed the said note. * * * '' *Second.* That the plaintiff agreed that if the appellant would indorse the note in question, criminal proceedings would not be instituted against the appellant's husband, and that the indorsement, therefore, was procured unlawfully, upon an agreement to compound a felony.

The appellant had furnished a bill of particulars naming as the officer and agent of the plaintiff who made threats and otherwise acted on its behalf, one William Reed. Upon the trial, however, the appellant testified that she never had met or communicated with said Reed. The court excluded all testimony as to anything that took place between the appellant and her husband leading up to the indorsing of the note by the appellant, or that tended to show the facts and circumstances under which the note was indorsed, saying: '' The court will exclude all testimony with reference to any conversation that the witness had with his wife, without the presence of Mr. Reed or some other officer or agent of the plaintiff.'' This ruling was adhered to throughout the trial, and thus the plaintiff was not permitted to show the facts upon which she based her claim of illegality in the inception of her alleged obligation. In so ruling the learned court was in error. This testimony was not sought to be introduced for the purpose of showing acts binding on the plaintiff because performed by it or its authority or agent, but instead was an attempt to show

invalidity relating to the title of the note subsequently coming into the hands of the plaintiff. The defendant cannot be deprived of her property by means of duress unless the plaintiff can show itself to be a purchaser for value without notice. Thus where in an action upon a note or other obligation it is shown that the same is tainted with illegality or fraud, then the presumption which ordinarily obtains that the holder thereof is a holder in due course, is repelled, and upon the holder is cast the burden of showing that he or some person under whom he claims acquired the instrument in due course. (Neg. Inst. Law, § 98; *American Exchange National Bank* v. *N. Y. Belting Co.*, 148 N. Y. 698.) In the case cited the court, by GRAY, J. (at p. 703) said: " The rule, in cases where the maker of a note shows that it was obtained from him by some fraudulent practice, requires the holder, who sues upon it, to show under what circumstances and for what value he became such."

Also, in *Canajoharie National Bank* v. *Diefendorf* (123 N. Y. 191, 206) the court, per RUGER, Ch. J., said: " A sufficient number of authorities has been cited to show the uniformity with which the cases in the highest courts of the State hold that upon proof by the defendant that his obligations have been fraudulently or illegally obtained and put in circulation, the person seeking to recover upon them must show not only that he bought before maturity and paid value, but also the circumstances under which he acquired the paper, with the view of enabling the jury to determine whether he acted in good faith or not. It makes no difference in the question presented, whether the plaintiff pursues the orderly course of first presenting and proving his note, relying upon the presumptions of *bona fides*, which accompany the possession of the paper, and delays making proof of the circumstances of his purchase until after the defendant gives evidence of his defense, or as in this case, he makes the proof of such circumstances as part of his affirmative case. The burden of making out good faith is always upon the party asserting his title as a *bona fide* holder in a case where the proof shows that the paper has been fraudulently, feloniously or illegally obtained from its maker or owner. Such a party makes out his title by presumptions, until it is impeached by evidence showing the paper had a fraudulent inception, and when this is done the plaintiff can no longer rest upon the presumptions, but must show affirmatively his good faith."

In *Second Nat. Bank* v. *Weston* (172 N. Y. 250, 253) the court said: " The proof for the respondent established that the notes were fraudulently issued by the defendant * * * as against his former copartners. It thereupon was incumbent upon the plaintiff to show that it was a *bona fide* holder of the notes for

First Department, January, 1925.                    [Vol. 211

value, and the only question to be considered on this appeal is whether it so conclusively established that fact as to be entitled to the direction of a verdict in its favor."

In *Citizens' National Bank v. Weston* (162 N. Y. 113) it was held that proof that a promissory note was fraudulent as between the payees and makers shifts to a transferee suing thereon the burden of proof; and it becomes necessary for him to show not only the payment of value by him, but the circumstances under which he became the holder of the note. The court (at p. 118) said: " The effect of this evidence was to shift the burden of proof, and it became necessary for the plaintiff to show not only the payment of value, but under what circumstances he became the holder of the note (*First Nat. Bank v. Green*, 43 N. Y. 298; *Vosburgh v. Diefendorf*, 119 N. Y. 357; *The Canajoharie Natl. Bank v. Diefendorf*, 123 N. Y. 191, 201, 202; *Joy v. Diefendorf*, 130 N. Y. 6, 9; *Smith v. Weston*, 159 N. Y. 194, 198, 199)."

In *Nickerson v. Ruger* (76 N. Y. 279) it was held that in an action on a promissory note, where the makers alleged and proved that the note was executed for the accommodation of the indorser, and was by the latter fraudulently diverted from the use intended, the burden is upon the plaintiff to show that he is a *bona fide* holder for value without notice, the court saying (p. 282): " The counsel for the defendants then said, ' I offer to prove that this note was sent to Taylor to take up another note which was given him as collateral security for the payment of some debts, and that he didn't take up that note at all.' This was ' objected to by plaintiffs as immaterial, also that defendants had not laid any foundation for the evidence by showing that plaintiffs were not innocent holders for value; ' the objection was sustained and defendants excepted.

" We think the exception was well taken. At the close of the plaintiffs' case they had, by the admission in the answer, proof of Taylor's indorsement and production of the note, established a *prima facie* case, and, for the time being, their own title and right to recover, and the defendants' liability. But if the facts offered in evidence by the defendants had been proved, the latter would have established, not merely that the note was without consideration and made for the accommodation of Taylor, but that it was fraudulently put in circulation and diverted from the use intended. It would then have been necessary for the plaintiffs to prove, if they could, that they were *bona fide* holders of the note for value or fail in the action   *   *  *."

In *Matter of Hill* (187 Fed. 214) the court said: " The execution of the notes was admitted, and therefore when the claimant

produced them his *prima facie* case was completely established. He was presumed to be a holder in good faith and for value before maturity, and the trustee was called upon to defend. This he did by presenting evidence    *    *    *    that the notes were given *    *    *    in the settlement of marginal gambling transactions, and were therefore founded on an illegal consideration.    *    *    * With the controversy in that situation, upon whom was the burden of further proof? Was it necessary for the trustee to go forward and prove affirmatively that Young did not acquire the notes in good faith and for value without notice, or did the burden shift at this point and lay upon Young a similar affirmative obligation?    *    *    *

" Two views of this question may be taken. In one of them the Negotiable Instruments Act is I think decisive. This statute governs the notes in controversy, whether they are New York or Pennsylvania contracts (and the evidence leaves that subject in doubt), for both States adopted the act several years before the notes were made. Section 98 in New York (Laws N. Y. 1897, c. 612)* and section 59 in Pennsylvania (P. L. 1901, p. 202)† alike provide:

" ' Every holder is deemed, *prima facie*, to be a holder in due course; but, when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as holder in due course.    *    *    * '

" And a holder in due course (section 91, N. Y.; section 52, Pa.‡) must have —

" ' taken the instrument under the following conditions:

" ' (1) That it is complete and regular upon its face.

" ' (2) That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact.

" ' (3) That he took it in good faith and for value.

" ' (4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it.'

" I shall assume that a holder in due course of a note given for a gambling debt may recover the full amount thereof against the maker, although there are some decisions to the contrary    *    *    * ; but it seems clear that, even where he may thus recover, he must

---

* Now Consol. Laws, chap. 38 (Laws of 1909, chap. 43), § 98.— [REP.

† See Penn. Laws of 1901, p. 202, No. 162, § 59; Pa. St. 1920, § 16049; 3 Purdon's Digest (13th ed.), 3279, § 68.— [REP.

‡ See Penn. Laws of 1901, p. 202, No. 162, § 52; Pa. St. 1920, § 16042; 3 Purdon's Digest (13th ed.), 3272, § 61.— [REP.

affirmatively prove that he holds in due course, as soon as it had been shown that the title of any person who has negotiated the instrument was defective. Therefore, since Winsmore's title was undoubtedly shown to be defective, either of these statutes expressly shifts the burden of proof to Young; and this is so plain that no argument is necessary."

It follows, therefore, that the appellant should have been allowed to adduce any proof tending to show that her indorsement of the note was procured by duress, and by so showing to repel the presumption that the plaintiff was a holder in due course, and thus cast on the plaintiff the burden of showing that fact.

It further appears from the testimony of the maker of the note that the appellant's indorsement was obtained at the suggestion of the plaintiff, to secure a debt of her husband to the plaintiff, after the plaintiff had been informed that the appellant had refused to indorse the note. Said witness testified as follows: " Well, Mr. Reed said that I could get my wife to — first he said mortgage. Well, I said, the property is mortgaged for all it is worth. Then he said, you could sell something. I said, if we want to sell today we won't get a cent. And then he spoke about the note, and I told him I had tried, but she would not. *And he said I should use every endeavor to make her indorse the note.*" (Italics not in record.)

There also was received in evidence a letter written by the plaintiff to the defendant's husband and shown to and read by the defendant, reading as follows:

" Mr. J. A. CANALIZO,                              " *October* 22, 1920.
          " Freeport, L. I.:

" My dear Mr. CANALIZO.— I have been anxiously waiting for you to call on me, especially since the receipt of your letter of ' October 20th.

" I am obliged to inform you that the executive committee of the Board of Directors is very much displeased at your failure to call here and I am instructed to inform you that unless you do so at once, drastic action will be taken. This would be extremely unpleasant and it seems to me for your future's sake that you ought to leave no stone unturned to immediately cancel the indebtedness in this Bank. You frequently informed me that Mrs. Canalizo has a large amount of property and it would seem at this juncture that she ought to come to your relief.

" I am afraid you do not realize the situation in which you are in. Come and see me at once.

                              " Yours very truly,
                                   " W. REED,
                                        " *Vice President.*"

Upon the new trial these facts will have to be considered in connection with the burden that may be thrown on the plaintiff to show that it is a holder without notice and without facts sufficient to put it on inquiry, if the appellant is able to show that the note was procured by duress.

While differing in some respects as to the facts from the case at bar, yet as an authority for holding that duress may be shown as against a holder of negotiable paper even though such holder had nothing to do with the procurement or duress, if said holder is not a purchaser for value without notice, see *National Bank* v. *Cox* (47 App. Div. 53). In that case the court said (p. 57): " There can be no doubt that such threats addressed to one who is called upon to make a contract, for the purpose of procuring it, constitute duress, and that the contract thus procured is voidable. * * *

" But it is claimed that though such threats may have been made by Fisher and may have produced upon Mrs. Cox the effect she says they have, yet as neither Minor nor the attorney for the bank participated in them, or so far as appears knew anything about them, they are not responsible for them, and the mortgage given is valid though obtained through duress. The principle upon which contracts obtained through duress are avoided is that the party who was coerced to make them never in fact consented to do so, and that, therefore, the apparent contract does not in fact exist. If that be the case and the contract has in fact no existence, it cannot be binding upon anybody. It is quite true that under certain circumstances the person who was coerced may be estopped from insisting that the contract was not valid; but unless thus estopped he is at liberty to assert the invalidity of the contract whenever called upon to perform it, even though the person thus calling upon him may have been a *bona fide* holder for value."

As noted in the case at bar, even though duress were shown, the appellant could not assert the invalidity of the note as against the plaintiff if the latter satisfied the burden of proof cast upon it, in the event of proof of duress, of showing that it was a purchaser for value without notice. But in order to cast that burden on the plaintiff, the appellant had to show in the first instance that her signature was illegally obtained from her through duress, and this under the ruling of the court she was not permitted to do.

In so far as the defense of compounding a felony is concerned, that defense was not sustained. Taking as true all the appellant offered to prove in the opening of counsel, there is nothing to indicate either that there was a felony committed by the appellant's husband or that there was any belief that such was the case.

For the foregoing reasons it follows that the judgment and order

should be reversed and a new trial ordered, with costs to appellant to abide the event.

CLARKE, P. J., McAvoy and MARTIN, JJ., concur; DOWLING, J., dissents.

Judgment and order reversed and new trial ordered, with costs to appellant to abide the event.