BENEDICT H. GRUNTAL et al., Copartners under the Firm Name of GRUNTAL, LILIENTHAL & Co., Respondents, *v.* UNITED STATES FIDELITY AND GUARANTY COMPANY et al., Defendants, and NATIONAL SURETY COMPANY et al., Appellants.

(Argued October 14, 1930; decided November 18, 1930.)

*Stewart Maurice* and *Murray D. Welch* for appellants. When the plaintiffs received the bonds in suit they did not become holders thereof in due course. (*Leo* v. *McCormack*, 186 N. Y. 330; *Kent* v. *DeCoppet*, 149 App. Div.

589; *Crusius* v. *Louchheim,* 132 Misc. Rep. 520; Neg. Inst. Law, § 98; *Vosburgh* v. *Diefendorf,* 119 N. Y. 357; *Canajoharie Nat. Bank* v. *Diefendorf,* 123 N. Y. 191; *American Exchange Nat. Bank* v. *New York Belting & Packing Co.,* 148 N. Y. 698; *Kittredge* v. *Grannis,* 236 N. Y. 375; *Fidelity-International Trust Co.* v. *Canalizo,* 211 App. Div. 325; *National Bond & Investment Co.* v. *Howard,* 218 App. Div. 65; *Karpas* v. *Bandler,* 218 App. Div. 418; *Harter* v. *Peoples Bank,* 221 App. Div. 122.) When the plaintiffs sold the bonds in suit, they converted said bonds to their own use. (*Casey* v. *Kastel,* 237 N. Y. 305; *Turnbull* v. *Longacre Bank,* 249 N. Y. 159; *Hale* v. *West Porto Rico Sugar Co.,* 200 App. Div. 577; *Iowa Securities Corp.* v. *Ridgewood Nat. Bank,* 106 Misc. Rep. 335; *Nicholson* v. *Morgan,* 119 Misc. Rep. 309.) When the plaintiffs took back the bonds in suit they did not become holders thereof in due course. (*Hibbs* v. *Brown,* 190 N. Y. 167; Neg. Inst. Law, § 97; *Devlin* v. *Brady,* 36 N. Y. 531; *Vosburgh* v. *Diefendorf,* 119 N. Y. 357; *Harter* v. *Peoples Bank,* 221 App. Div. 122; *Woods* v. *Sizer,* 102 Misc. Rep. 453; *Bute* v. *Williams,* 162 S. W. Rep. 989; *Andrews* v. *Robertson,* 111 Wis. 334; *Kost* v. *Bender,* 25 Mich. 515; *Battersbee* v. *Calkins,* 128 Mich. 569; *Aragon Coffee Co.* v. *Rogers,* 105 Va. 51; Daniel Neg. Inst. §805.

*Harold Nathan* and *D. William Leider* for respondents. The plaintiffs, when they took back the stolen bonds and delivered other bonds in their place, became transferees from the original purchasers and acquired all the rights of those purchasers as holders in due course, regardless of any notice imputable to the plaintiffs. (Neg. Inst. Law, § 91; *Kost* v. *Bender,* 25 Mich. 515; *Hibbs* v. *Brown,* 190 N. Y. 167; *Holt* v. *Hopkins,* 63 Misc. Rep. 537; 136 App. Div. 940; *Dengler* v. *Paul,* 83 Pa. Super. Ct. 37; *Murtha* v. *Curley,* 90 N. Y. 372; *Bell* v. *Merrifield,* 109 N. Y. 202; *City of Syracuse* v. *Hogan,* 234 N. Y. 457; *Harter* v. *Peoples*

*Bank*, 221 App. Div. 122.) The plaintiffs were holders of the bonds for value. (J Daniel Neg. Inst. §§ 821–823; *Merchants Nat. Bank* v. *Santa Maria Sugar Co.*, 162 App. Div. 248; 220 N. Y. 732; *Second Nat. Bank* v. *Breitung*, 203 App. Div. 636; *Geneva Nat. Bank* v. *Fox*, 190 N. Y. Supp. 747; *Citizens State Bank* v. *Tessman & Co.*, 121 Minn. 34.) There was no conversion of the bonds by the plaintiffs. (*Casey* v. *Kastel*, 237 N. Y. 305; *First Nat. Bank* v. *Hudson*, 166 App. Div. 51; 222 N. Y. 556; *Mutual Trust Co.* v. *Merchants Nat. Bank*, 236 N. Y. 478.) The plaintiffs are holders of the bonds in good faith and without notice. (*Henry* v. *Allen*, 151 N. Y. 1; *Horan* v. *Mason*, 141 App. Div. 89; *Bienenstok* v. *Ammidown*, 155 N. Y. 47; *Benedict* v. *Arnoux*, 154 N. Y. 715; *New York* v. *Tenth Nat. Bank*, 111 N. Y. 446; *Welsh* v. *German American Bank*, 73 N. Y. 424; *Brooklyn Distilling Co.* v. *Standard Distilling Co.*, 120 App. Div. 237.)

CRANE, J. The plaintiffs are stockbrokers, members of the New York Stock Exchange. Louis Katz and Cassie Lewin, of the firm of Katz, Lewin & Wiener, were customers. On April 17, 1928, and thereafter, Katz delivered to the plaintiffs to sell for his account three $1,000 New York Railways six per cent bonds, two $1,000 Detroit-International Bridge Company seven per cent bonds, and three $1,000 Brooklyn-Manhattan Transit Company six per cent bonds. The bonds were sold and the purchase price credited to his account, of which he received part in cash, leaving a balance due when his account was closed May 31, 1928.

Cassie Lewin brought to the plaintiffs in May of the same year three $1,000 Pennsylvania Railroad five per cent bonds, three $1,000 United States of Brazil six and one-half per cent bonds to be sold for his account. He received the full amount of the purchase price, less commissions.

All these bonds were coupon bonds payable to bearer and were negotiable instruments. They had been stolen from their true owners. Whether Katz and Lewin were parties to the theft or fraud in obtaining the bonds does not appear. The brokers, however, had no knowledge of the fact. All of these bonds, with the exception of one $1,000 United States of Brazil bond, were returned to the brokers as stolen bonds, and were replaced by them with like bonds of unquestioned title.

The rules of the New York Stock Exchange provided that negotiable bonds claimed to have been lost or stolen are not a good delivery, and if bonds are delivered which any one claims to have been lost or stolen, they can be at any time returned to the Stock Exchange house making delivery, and the latter must take them back when tendered, and deliver bonds constituting a good delivery, until such Stock Exchange house has established its title as against the claim of the previous holder. The plaintiffs, in making substituted deliveries, were complying with this rule.

This left them with the stolen bonds on their hands, which they could not dispose of until the title had been cleared up. Thus this action. The owners of the stolen bonds had been insured against theft by the three defendant insurance companies. Having paid the loss, these insurance companies became subrogated to the rights of the true owners, and claimed and still claim title to the bonds as against the plaintiffs. One of these companies, the United States Fidelity and Guaranty Company, has dropped out of the appeal. This action is to establish the title to these bonds and for judgment declaring the plaintiffs to be the true and lawful owners thereof.

When Katz and Lewin turned these bonds over to the plaintiffs to sell for them, the plaintiffs in so doing acted as agents for these customers, and the fact that under the rules of the Stock Exchange they had sold the bonds in their own name without revealing the identity of their

principals, did not change the situation. Assuming for the moment that these bonds, payable to bearer, are to be treated like other personal property, these brokers were liable in conversion to the true owners. It would be no excuse that they acted in good faith and without knowledge of the theft. (*Casey* v. *Kastel*, 237 N. Y. 305, 312, 314.) Was their position changed when they repurchased them from holders in due course?

When the plaintiffs sold the bonds to purchasers for value without notice, that is, to holders in due course (Neg. Inst. Law; Cons. Laws, ch. 38, § 91), these holders obtained good title and the rights of the true owners were barred; the purchasers held the bonds free from any defect of title. (Neg. Inst. Law, § 96.) The whole world was free to purchase good title from these holders with the exception of those stated in section 97, which reads: "In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were non-negotiable. But a holder who derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affecting the instrument, has all the rights of such former holder in respect of all parties prior to the latter."

When the brokers took back the stolen bonds, as above stated, they paid value for them; they made good their delivery by substituting other bonds of like kind and nature. At that time they were not acting as agents for Katz and Lewin, but in their own right, and in fulfillment of their own obligations. The substituted bonds were their property. The agency for their customers had terminated. They, therefore, had all the rights of these holders in due course, unless they came within the exception, that is, were parties to the fraud or illegality affecting the title to the bonds.

The Appellate Division, considering *Hibbs* v. *Brown* (112 App. Div. 214; 190 N. Y. 167) as authoritative upon this point, held that the brokers were holders in due

course. An examination of that case fails to disclose that the question which has here been raised was there fully considered. In this court, at least, the main contention in the *Hibbs* case was over the negotiability of the bonds and not the title to them. We here have the question squarely presented whether the brokers' liability for conversion, if any, when they held and sold the bonds, was wiped out when they repurchased them for value from a holder in due course. The answer to this requires two considerations: *First,* whether the liability of one for conversion who innocently takes and disposes of stolen securities makes him a party to the fraud and illegality affecting the instrument; and, *second,* whether the first assumption is correct that a broker, acting in good faith and without notice, is liable in conversion for selling and disposing of bonds payable to bearer.

Actual participation in the fraud or illegality affecting title to the instrument is not requisite to bring one within the meaning of section 97. A payee of a negotiable instrument merely having knowledge of an infirmity at the time of transfer does not change his position upon reacquisition from a holder in due course. His previous knowledge of defects in title at the time of transfer is revived; he does not become a holder in due course, although his reacquisition is from such an one. (*Horan* v. *Mason,* 141 App. Div. 89; *Harter* v. *Peoples Bank of Buffalo,* 221 App. Div. 122.) Whether this rule is limited to payees or extends to transferrers other than payees, we need not consider at this time. It certainly does not extend to those who take from a holder in due course with knowledge of defects, but who have not with such knowledge previously transferred the instrument. (*Vosburgh* v. *Diefendorf,* 119 N. Y. 357.)

The appellant insists that the broker who exercises dominion over stolen property is to be classed as a party to the fraud or illegality, and cannot better himself by repurchase from an innocent holder. We are confronted

with the proposition that if the brokers were liable for conversion in selling the bonds, their title as holders in due course upon reacquisition is worthless. The value of the bonds would be offset by the damages for conversion, and to prevent circuity of action, the courts will consider the brokers, upon reacquisition, to have assumed their original position as takers without value and, therefore, not holders in due course. This matter has been thoroughly touched upon by Professor Chafee in an article in the Columbia Law Review (Vol. 21, p. 538), entitled, "The Reacquisition of a Negotiable Instrument by a Prior Party." (See, also, *Bank of Meno* v. *Coulter*, 94 Okla. 213; reviewed in 37 Harvard Law Review, p. 907.)

These reflections lead to a reconsideration of the main premise that the brokers were liable in the first instance for conversion in selling stolen negotiable bonds, payable to bearer.

The general rule no doubt is, as above stated, that an innocent holder, appropriating or disposing of stolen property, is liable for conversion. Both at common law (*Turnbull* v. *Bowyer*, 40 N. Y. 456) and under the Negotiable Instruments Law, a holder in due course of negotiable paper takes good title even from a thief. As to stock certificates, see *Turnbull* v. *Longacre Bank*, 249 N. Y. 159. United States government bonds, payable to bearer, and like bonds of corporations, circulate to-day as freely as money; title passes by delivery. A broker accepting such securities for disposition on behalf of a customer has little or no means of warning or inquiry such as indorsements or other relationships might suggest. The securities pass from hand to hand by delivery. He is a mere conduit between the seller and the purchaser, for which he receives a small commission. The purchaser is not liable for conversion, yet the broker, acting without any ground for suspicion, is said to be liable for the full value of the security which he has sold, although he has paid the purchase money over to the

seller. The harshness of such a rule has been recognized by the courts in repudiating his liability  Public policy does not demand the extension of liability for innocent acts to such a case. In *Pratt* v. *Higginson* (230 Mass. 256) the Supreme Judicial Court of Massachusetts said of brokers: " The question for decision therefore is, whether the defendants, who received and sold the bonds and accounted for the proceeds to the apparent owner without notice of any infirmity in the title or of any circumstances which should have put them upon inquiry, can be held responsible in damages by the true owner for conversion.

" The defendants undoubtedly exercised dominion over the bonds by converting them into money. If the property had consisted of chattels or non-negotiable documents, of which certificates of stock are an example, the plaintiff's title would not have been divested by a sale even to a purchaser for value and in good faith. *Scollans* v. *Rollins,* 173 Mass. 275, 278, and cases there collected. But to this rule there is a well recognized exception where the property consists of negotiable securities."

The decision of the court was that the brokers were not liable for conversion.

The Supreme Judicial Court of Maine, in *Kimball* v. *Billings* (55 Me. 147), has held to the contrary.

We are inclined to the view that the plaintiffs in this case were not liable for conversion, when, in behalf of an apparently honest customer with whom they had had past dealings, and without any cause whatever for suspicion, they sold for his account negotiable corporate bonds payable to bearer. This being so, the plaintiffs upon reacquiring the stolen bonds for value, became holders in due course and owners thereof.

For the reasons here stated, the judgment should, therefore, be affirmed, with costs.

Cardozo, Ch. J., Pound, Lehman, Kellogg, O'Brien and Hubbs, JJ., concur.

Judgment affirmed.