[Civ. No. 41976. Second Dist., Div. Four. Feb. 25, 1974.]

ANNELIESE MARTINEZ, Plaintiff and Appellant, v.
DEMPSEY-TEGELER & CO., INC., Defendant and Respondent.

510

## COUNSEL

Hillel Chodos for Plaintiff and Appellant.

Irell & Manella, Charles H. Phillips and Gregory R. Smith for Defendant and Respondent.

## OPINION

**COLE, J.**[*]—Plaintiff Anneliese Martinez appeals from an adverse judgment in her action against defendant, a stockbroker. She contended that defendant converted her property by selling shares of stock in Cutter Laboratories, Inc. (Cutter) represented by certificates in the name of plaintiff and her husband, Frank, and thereafter delivering all of the proceeds to him. In a non-jury trial the court found against her contentions. We agree, and affirm the judgment.

It was stipulated that the shares were the community property of Frank and of plaintiff. Defendant knew of the community property nature of the stock and of its proceeds. Frank had done business with defendant for many years, albeit on a sporadic basis. An account in his name was maintained by defendant. At least one employee of defendant had met plaintiff. On January 18, 1966, Frank presented to defendant certificates for 17,561 shares of Cutter. He also delivered stock powers, separate from the certificates, to defendant. All of the stock powers, it is agreed without dispute, were endorsed in blank with plaintiff's genuine signature. Frank stated that he thought Cutter was going to decline in value and instructed defendant to sell the shares.

Defendant sold 5,600 of the shares. The proceeds of the sale were placed by defendant in a joint account in the names of Frank and plaintiff which

---

[*]Assigned by the Chairman of the Judicial Council.

account defendant opened for that purpose. Defendant was told by Frank that plaintiff did not want any more shares to be sold, and accordingly defendant redelivered to Frank certificates representing the 11,961 shares which it had not sold. These latter shares are not in issue here. The proceeds of the shares which had been sold were invested in treasury bills by defendant, with Frank's concurrence, the latter saying that he wanted his funds to remain in a liquid condition so he could make further purchases at an appropriate time. In April 1966, Frank asked defendant for the proceeds. Treasury bills, worth $122,000, were delivered to him. The court found, on the basis of testimony amply supporting the finding, that the transaction was in accord with reasonable commercial standards and practices as they existed in 1966. Defendant mailed to Frank and plaintiff a check made out to both of them for the remaining balance, in the sum of $3,033.46.

 The foregoing facts were all of the relevant facts known to defendant at the time of the transaction. We set them forth before discussing other facts relied upon by plaintiff, since they convincingly indicate that the trial court's judgment was correct on at least two theories: (1) Frank had the power to manage and control and the absolute power to dispose of the community personal property; (2) Commercial Code section 8318 provides a complete defense. In light of our agreement with these principles, it is not necessary to discuss additional theories argued by the parties.

We now recite other facts, not known to defendant at the time of the transaction, upon which plaintiff relies. The stock powers endorsed in blank by her had been so signed in 1963, prior to a trip she took to Europe. In January 1966, plaintiff and Frank were estranged. On the day Frank delivered the shares to defendant, plaintiff commenced a divorce action against Frank and secured a temporary restraining order, and some days later she secured a preliminary injunction, ordering Frank not to dispose of community property except in the ordinary course of business. Frank cashed the check for $3,033.46 mentioned above. Plaintiff received none of the proceeds. Frank then left the United States. Plaintiff has not received any of the proceeds of the sale of the shares which defendant delivered to Frank in the form of treasury bills.

It should also be mentioned that the court found that defendant at all times acted in good faith and at no time prior to Frank's departure from the country knew or had reason to know of the marital discord or of any limit on or impairment of any right of Frank to dispose of the community property. The court also found that defendant made no inquiry of plaintiff before disposing of the Cutter stock or delivering the proceeds to Frank.

Similarly, the court found that plaintiff at no time advised defendant of any of the facts listed above as not being known to defendant.

On this appeal plaintiff makes no claim with respect to the proceeds of the $3,033.46 check. She limits her claim to one-half of the $122,000 value of the treasury bills. She further states that the conversion of which she complains occurred in April 1966, when defendant delivered the treasury bills to Frank and not in January 1966, when defendant sold the Cutter shares.

### The Husband's Right to Dispose of
### Community Property Provides a Defense

At the time of the transaction, Civil Code section 172 provided, so far as is relevant, that "[T]he husband has the management and control of the community personal property, with like absolute power of disposition . . . ." (The provision is now found in Civ. Code, § 5125.) ▮ Plaintiff makes a futile attempt to avoid the application of this statute. She admits that the testimony was uncontradicted that defendant knew and believed the Cutter shares were community property when they were acquired by plaintiff and Frank in December 1964, upon the sale by plaintiff and her husband to Cutter of a business they owned. But because the shares did not describe the couple as husband and wife, plaintiff urges that Civil Code section 164 as it read in 1964[1] created a presumption that the shares were held as tenants in common. This argument is defeated by the uncontradicted testimony referred to above; since it was stipulated that the shares were in fact community property the argument loses all force.

Plaintiff's further contention that the frequency of divorce makes it "irrational" to assume the continuance of the marriage is an argument which we emphatically reject without further comment. Her contention, that the size of the transaction was so large in relationship to the normal dealings which Frank had previously had with defendant that the latter should have been put on notice that Frank was attempting to convert his fortune to

---

[1] The applicable portions are as follows: ". . . all other personal property wherever situated acquired during the marriage by a married person while domiciled in this state is community property; but whenever any real or personal property, or any interest therein or encumbrance thereon, is acquired by a married woman by an instrument in writing, the presumption is that the same is her separate property, and if acquired by such married woman and any other person the presumption is that she takes the part acquired by her, as tenant in common, unless a different intention is expressed in the instrument; except, that when any of such property is acquired by husband and wife by an instrument in which they are described as husband and wife, unless a different intention is expressed in the instrument, the presumption is that such property is the community property of said husband and wife . . . ."

cash, does not in any way derogate from the force of section 172 (now § 5125). And her argument that defendant should have been put on notice that something was wrong when Frank asked for the treasury bills to be given to him is directly contrary to the facts found by the trial court and well supported in the evidence that defendant acted in perfect good faith, had no reason to know of any trouble between the husband and wife, exercised all reasonable care and did not act in a wrongful manner toward plaintiff. Indeed, plaintiff cites no cases in support of her position.

### Commercial Code Section 8318 Provides a Defense

Commercial Code section 8318 states, "An agent or bailee who in good faith (including observance of reasonable commercial standards if he is in the business of buying, selling or otherwise dealing with securities) has received securities and sold, pledged or delivered them according to the instructions of his principal is not liable for conversion or for participation in breach of fiduciary duty although the principal had no right to dispose of them."

The official comments by the American Law Institute and the National Conference of Commissioners on Uniform State Laws state that the purpose of the statute is "[t]o negate the liability of agents, including brokers, and of bailees, for innocent conversion or participation in breach of fiduciary duty. . . ." and that the statute follows the decision in *Gruntal* v. *U.S. Fidelity & Guaranty Co.* (reported as *Gruntal* v. *National Surety Co.* (1930) 254 N.Y. 468 [173 N.E. 682, 73 A.L.R. 1337]). That case held that innocent brokers selling stolen negotiable bonds in bearer form ". . . were not liable for conversion, when, in behalf of an apparently honest customer with whom they had had past dealings, and without any cause whatever for suspicion, they sold for his account" such bonds. (173 N.E. at p. 684.)

Plaintiff's attempts to avoid the force of this statute are totally without merit. She states that section 8318 is inapplicable because she seeks damages only for the April 1966, delivery of the treasury bills and not for the January sale of the shares of stock. Given the purpose of the statute, as recited above, it is clear that it would afford no relief at all, and therefore fail in its intention, if a broker were immunized from liability for conversion upon selling securities, but not upon delivering the proceeds to the principal authorizing the sale. ▮ We hold that a sale, within the meaning of section 8318, includes the delivery of the proceeds so long as good faith exists on the part of the broker.

▮ The argument is also made that treasury bills are not securities and

are, therefore, not within the scope of the statute. We disagree. No authority is cited for this proposition and such bills meet all of the requirements of Commercial Code section 8102, subdivision (1) (a)[2] which defines the term "security."

Likewise, it is clear that in dealing with defendant Frank was acting as a principal. The fact that, for its own internal purposes, defendant put the proceeds of the sale in an account in the names of both Frank and plaintiff in no way lessened Frank's position, even if, for sake of argument, it were assumed that plaintiff thereby also became a principal within the statutory language. In *Gruntal* v. *National Surety Co., supra,* 173 N.E. 682, the transactions in question were undertaken, separately, by different members of a customer firm dealing with the broker in question. The section was adopted to follow the teachings of *Gruntal.* As the trial court pointed out here, plaintiff had no dealings or relationship with defendant—the business was transacted with Frank and it was between Frank and defendant that a principal-agent relationship existed.

Plaintiff's remaining contention with respect to section 8318—that certain evidence showed that defendant acted unreasonably, not in good faith and not in accordance with reasonable commercial standards—is nothing more than a request that we adopt evidence which the trial court rejected and that we reject evidence which the trial court adopted. That is not an appellate function.

The judgment is affirmed.

Jefferson, Acting P. J., and Kingsley, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 24, 1974.

---

[2]"(1) In this division unless the context otherwise requires
"(a) A 'security' is an instrument which
"(i) Is issued in bearer or registered form; and
"(ii) Is of a type commonly dealt in upon securities exchanges or markets or commonly recognized in any area in which it is issued or dealt in as a medium for investment; and
"(iii) Is either one of a class or series or by its terms is divisible into a class or series of instruments; and
"(iv) Evidences a share, participation or other interest in property or in an enterprise or evidences an obligation of the issuer."