51095. BRANNON et al. v. FIRST NATIONAL BANK OF ATLANTA.

STOLZ, Judge.

The plaintiff bank brought an action against Mr.

Brannon and Mr. and Mrs. Holzman to recover, under alternative theories of breach of warranty (Count 1) and unjust enrichment (Count 2), the payment it had made to the Holzmans for a counterfeit U. S. Treasury Bill. The Holzmans, acting as authorized agents of defendant Brannon, had presented the bill, which was in bearer form, to the plaintiff bank for payment. The defendants' answers alleged that the Holzmans had never seen this type of document before and that the plaintiff bank's personnel had examined the two treasury bills presented before accepting them, after the Holzmans specifically inquired of the plaintiff as to their validity. The plaintiff moved for a summary judgment, supporting the motion with an affidavit of a Federal Reserve Bank official to the effect that the bills were dishonored after they were discovered to be not genuine, and an affidavit of an official of the plaintiff bank, to the effect that payment for the two bills presented by the Holzmans was made by allowing Mrs. Holzman to overdraw her account with the plaintiff bank by drawing two checks thereon. The bank then issued two cashier's checks made payable, at the Holzmans' request, to defendant Brannon, who was identified as "Mrs. Holzman's son and Mrs. [sic] Holzman's stepson and as the owner of the aforesaid Treasury Bills." The plaintiff bank, after being informed that the bills were not genuine, was able to stop payment on only one of them, resulting in the overdraft balance in Mrs. Holzman's account for which the plaintiff sues.

The defendants appeal from the grant of summary judgment for the plaintiff.

1. The U. S. Treasury Bills are investment securities as defined by Code Ann. § 109A-8—102 (1) (a) (Ga. L. 1962, pp. 156, 355 as amended). See Martinez v. Dempsey-Tegeler & Co., 112 Cal. Rptr. 414, 14 UCC Rep. Serv. 486. "A writing which is a security is governed by this Article [8] and not by Uniform Commercial Code — [Article 3] Commercial Paper even though it also meets the requirements of that Article." Code Ann. § 109A-8—102, supra, (1) (b). See also Code Ann. 109A-3—103 (1) (Ga. L. 1962, pp. 156, 238). Therefore, the provisions of Code Ann. § 109A-3—417 (4) (Ga. L. 1962,

pp. 156, 263) are not applicable to this case, as the appellants contend.

Code Ann. § 109A-8—306 (Ga. L. 1962, pp. 156, 365) provides in part as follows: "(2) A person by transferring a security to a purchaser for value warrants only that (a) his transfer is effective and rightful; and (b) the security is genuine and has not been materially altered; and (c) he knows no fact which might impair the validity of the security. (3) Where a security is delivered by an intermediary known to be entrusted with delivery of the security on behalf of another or with collection of a draft or other claim against such delivery, the intermediary by such delivery warrants only his own good faith and authority even though he has purchased or made advances against the claim to be collected against the delivery." The complaint alleged that the Holzmans, in presenting the securities to the plaintiff bank, were "acting as authorized agents of defendant Brannon." This admission in judicio was reiterated by defendant Brannon in his answer and corroborated by the affidavit of the plaintiff bank's official that the Holzmans had the payment for the securities made payable to defendant Brannon, whom they represented to be their kinsman and owner of the securities. Thus, the showing on the motion for summary judgment was that Brannon, as principal, transferred the treasury bills to the plaintiff through the Holzmans, as his agents/intermediaries. As principal, he warranted (under the provisions of Code Ann. § 109A-8—306 (2) (b), supra) that the bills were genuine and had not been materially altered.

It is urged that the Holzmans' inquiry as to the validity of the securities was notice sufficient to charge the plaintiff with knowledge that the securities were not genuine, under the provisions of Code § 37-116. The inquiry was not notice that the securities were not genuine (see Code Ann. § 109A-1—201 (25), (26), (27) (Ga. L. 1962, pp. 156, 161, as amended)), but was merely an attempt to ascertain whether the securities, with which the Holzmans were allegedly unfamiliar, could be transferred for value. Moreover, the securities were negotiable instruments (Code Ann. § 109A-8—105 (1) (Ga. L. 1962, pp. 156, 357)) in bearer form and the plaintiff

bank, taking delivery of them as a bona fide purchaser, was entitled to rely on the applicable warranties, namely, those of § 109A-8—306 (2). "The fact that the purchaser . . . has notice that the security is held for a third person . . . does not create a duty of inquiry into the rightfulness of the transfer . . ." Code Ann. § 109A-8—304 (2) (Ga. L. 1962, pp. 156, 364).

Accordingly, the grant of the summary judgment against defendant Brannon on the theory of breach of warranty, was not error.

2. Since the showing was that the treasury bills were presented by the defendants Holzman as intermediaries known to be entrusted with delivery of the securities on behalf of defendant Brannon, the Holzmans warranted only their own good faith and authority in the transaction (Code Ann. § 109A-8—306 (3), supra), and not the genuineness of the treasury bills, as did defendant Brannon. Accordingly, the summary judgment against the defendants Holzman was not authorized on the theory of breach of warranty.

3. Neither was the grant of the summary judgment against the Holzmans authorized on the theory of unjust enrichment. It is true that the UCC provides that, *unless displaced by its particular provisions,* the principles of law and equity shall supplement its provisions (Code Ann. § 109A-1—103; Ga. L. 1962, pp. 156, 159). However, the Commercial Code spells out which specific warranties various parties make by operation of law, so that a purchaser for value may know in advance his available remedies. This is in accordance with one of the underlying purposes and policies of the Act, "to simplify, clarify and modernize the law governing commercial transactions." Code Ann. § 109A-1—102 (2) (a). (Ga. L. 1962, pp. 156, 158). The plaintiff bank's remedy in the present case lies in the applicable warranties. To allow recovery via unjust enrichment would make the specified warranties meaningless and impair the negotiability of securities.

4. Investment securities are subject to the provisions of Code Ann. Ch. 109A-4 when handled by banks for collection purposes. See Uniform Commercial Code, Official Comment 1 to § 4-102. In this case, the record

shows that the bank and defendants Holzman agreed that the treasury bills would be discounted and sold through the normal market channels. Payment was to be credited to the Holzmans' account, but, since this could not be effected until the bills were verified, the Holzmans, who wanted immediate payment, were allowed to overdraw their account by the amount to be received.

This procedure, acquiesced in by the Holzmans, was simply a device by which the bank obtained a right of recourse against its customers in the event that the transaction went awry. In effect, there were two separate monetary transactions involved: one wherein treasury bills were presented to the bank for payment and another wherein the bank's customer overdrew her provisionally credited account by writing drafts used to purchase cashier's checks.

With regard to these transactions, First National was acting as both a depository and collecting bank as to the provisional credit given the Holzmans. See Code Ann. § 109A-4—105 (a), (d) (Ga. L. 1962, pp. 156, 286). "(1) If a collecting bank has made provisional settlement with its customer for an item and itself fails by reason of dishonor, suspension of payments by a bank or otherwise to receive a settlement for the item which is or becomes final, the bank may revoke the settlement given by it, charge back the amount of any credit given for the item to its customer's account or obtain refund from its customer whether or not it is able to return the items if by its midnight deadline or within longer reasonable time after it learns the facts it returns the item or sends notification of the facts." Code Ann. § 109A-4—212 (1) (Ga. L. 1962, pp. 156, 297; 1969, p. 956). This right to charge back or to obtain a refund is affected neither by the Holzmans' prior use of the credit given, nor by the cause of nonpayment, nor by the party ultimately liable for it. See Uniform Commercial Code, Official Comment 5 to § 4-212. Therefore, when the treasury bills were dishonored, the appellee bank had the right to charge back the Holzmans' account or to obtain a refund for the money advanced.

Under these circumstances, the trial court correctly granted the plaintiff's motion for summary judgment against defendants Holzman.

*Judgment affirmed. Deen, P. J., concurs. Evans, J., concurs in·the judgment only.*

ARGUED SEPTEMBER 10, 1975 — DECIDED
JANUARY 16, 1976.

*Poole, Pearce, Cooper & Smith, William F. Lozier,* for appellants.

*W. Lymon Dillon, J. Halleck Hoeland,* for appellee.