**BRADFORD SECURITIES PROCESS-ING SERVICES, INC., Plaintiff,**

v.

**FIRST NATIONAL BANK OF SCHIL-LER PARK, et al., Defendants.**

No. 76 C 3843.

United States District Court,
N. D. Illinois, E. D.

May 31, 1979.

Robert F. Hanley, Terry Rose Saunders, Barbara S. Steiner, Jenner & Block, Chicago, Ill., for plaintiff.

John B. Huck, Mark P. Cohen, Chapman & Cutler, Chicago, Ill., for defendant Bartlett & Co.

Lawrence Ripes, Lawrence W. Schueler, Ripes & Schueler, Ltd., Franklin Park, Ill., for defendant Bank of Schiller Pk.

## ORDER

ROSZKOWSKI, District Judge.

Plaintiff, Bradford Securities Processing Services, Inc. ("Bradford") has brought an action for breach of warranty in the transfer of Osage, Oklahoma Industrial Revenue Bonds, Series A, 1973, 8%, 3/1/84 numbered 200–213 ("Osage" bonds) against defendants G. L. Bartlett & Company, Inc. ("Bartlett") and the First National Bank of Schiller Park ("the Bank").

Plaintiff Bradford is a corporation with its principal place of business in New York, and branch offices in approximately thirty cities, including Chicago. Bradford is in the business of performing clearing and custodial services on behalf of securities and bond brokers and dealers, and is registered with Securities and Exchange Commission as a clearing agency.

Defendant Bartlett is an Arizona corporation with its principal place of business in Phoenix, Arizona. Bartlett is a broker-dealer in securities, including municipal securities and industrial revenue bonds, and buys and sells securities for its own account and for the account of its customers.

Defendant Bank of Schiller Park is a national banking corporation with its principal place of business in Schiller Park, Illinois.

Jurisdiction is founded under this Court's diversity jurisdiction. 28 U.S.C. § 1332. The action was tried before this Court without a jury on September 25, 26 and 27, 1978.

The broad issue facing this Court is whether plaintiff Bradford may recover the purchase price of the Osage Bonds, plus interest. The resolution of this question, by stipulation of the parties [1] is dependent upon an analysis of Article 8, the Investment Securities Article under the Uniform Commercial Code (the "UCC"). Ill.Rev. Stat. Ch. 26 § 8–306 (1972).

Before proceeding with the resolution of the immediate issue, it is necessary to reveal the background and facts of this case.

The dispute between the parties arises over the transfer of "Osage" bonds Nos. 200 through 213. Specifically, plaintiff Bradford maintains that the bonds transferred to Bradford by defendants were not genuine because they were unsigned at the time of transfer to Bradford. Bartlett, on the other hand, maintains that the bonds delivered to plaintiff were signed, genuine

bonds. In the alternative, Bartlett contends that it acted only as an agent or intermediary in the transaction and therefore made no warranty as to the genuineness of the bonds under § 8–306; that any warranty it may have made as to the genuineness of the bonds does not extend to Bradford; and, that Bradford is estopped from raising the warranty as to the genuineness of the bonds.

Additionally, Bartlett has filed a three count cross-claim against defendant Bank alleging mainly that Bartlett and the Bank had entered into an oral agreement whereby the Bank agreed to check all the bonds in question to assure that the bonds were in proper form, signed, and authentic.

Defendant Schiller Park Bank adopts defendant Bartlett's defenses and maintains primarily that its employee delivered signed, authentic Osage bonds to plaintiff at their Chicago offices on July 8, 1974.

## THE OSAGE BOND TRANSACTION

Plaintiff Bradford contends that on June 24, 1974, Bartlett entered into an agreement to purchase from R. J. Allen Associates, Inc. ("R. J. Allen") $110,000 (face amount) of Osage Co. Oklahoma Industrial Development Revenue Bonds ("Osage Bonds") for the agreed price of $104,035.55, which included $70,000 (face amount) Osage bonds, Series A, 1973, 8%, maturity 3/1/84, Nos. 200 through 213 for the agreed price of $66,204.44.

Defendant Bartlett maintains that, on the contrary, it acted merely as the agent for National Municipal, Inc.'s [2] ("National") to effect the purchase by National of the $110,000 (face value) Osage bonds from the company known as R. J. Allen, and the sale by National to R. J. Allen of $55,000 (face value) McClain bonds.

1. The parties have stipulated that Article 8 of the U.C.C. is the governing law.

2. National Municipals, Inc. was a customer of plaintiff Bradford since April 2, 1974. Pursuant to an agreement entered into by these parties Bradford would accept delivery of and pay for securities and bonds purchased by National from others. By advancing the purchase price to National Municipal, Bradford retained a security interest in these bonds and securities until it was repaid.

At trial,[3] testimony was introduced which reflected that an employee of Bartlett brought the Osage bond transaction to the attention of Gary Bartlett on June 24, 1974. That thereafter, Bartlett contacted Bruce Bressman of National by phone and was then asked to serve as National's agent in the Osage transaction. Bressman requested that Bartlett act as his agent in the transfer of $110,000 or face value Osage Bonds in exchange for $55,000 face value of McClain County, Oklahoma Industrial Development Revenue Bonds ("McClain Bonds"). The prices of these bonds had already been set by Bressman, and Bressman agreed to pay Bartlett $1,100.00 for acting as agent in the transaction. (Bressman had also predetermined a seller and buyer of the bonds.) After this conversation, Bartlett issued its confirmation reflecting that Bartlett acted as National Municipal's agent.

National Municipals received its Osage bonds and R. J. Allen was to receive its McClain bonds through a procedure known as a simultaneous exchange, whereby National Municipals sent its McClain bonds to Schiller Park, and R. J. Allen sent its Osage bonds to Schiller Park[4]. When both sets of bonds were in the Bank's possession the Osage bonds were delivered to National Municipals, and the McClain bonds sent to R. J. Allen. This simultaneous exchange occurred on July 5, 1974 at which time the Bank received from R. J. Allen the $110,- 000.00 Osage bonds consisting of 22 bonds with a face value of $5,000.00 each and included the $70,000 Osage bonds Nos. 200 through 213 each with a face value of $5,000 in issue in this case.

In early July, 1974, plaintiff Bradford's New York office received customer instructions from National directing Bradford to receive on National's behalf the $110,000 Osage bonds which included the $70,000 Osage bonds in issue.

At Bradford the Osage bonds were received by Mr. Price from Steven DiMeo, a Schiller Park Bank employee, and subsequently, delivered to Mr. Bucholz of Bradford's Chicago office. While Mr. Bucholz testified that he checked the bonds for a legal opinion, coupons, maturity and interest rate, he checked only the first bond for a signature. By Bradford's own admission, it was not the policy in 1974 for Bradford employees to check for signature on each bond Bradford accepted.

However, Mr. Bucholz testified that by checking only one signature on the bonds he was not following express instructions to check *all* signatures on the bonds to determine authenticity. Richard Dale, also an employee of Bradford's and the officer responsible for writing the manual on procedures for checking bonds, stated that it would take him approximately ten to twenty minutes to check these 22 bonds. Incredibly, Mr. Bucholz, who was inexperienced in

---

3. Plaintiff Bradford objected to the introduction of the testimony by Gary Bartlett on the ground that it was inadmissible hearsay and, therefore, could not be used to show that Bartlett acted merely as National's agent. Because of this Court's resolution of the case, it is not necessary for us to reach this question. However, we note that in the case of *Shama v. United States*, 94 F.2d 1, 5 (8th Cir. 1938) where the Court was faced with the identical challenge, it stated:

> The rule cited by appellant, that "the declarations of an agent are not admissible to prove the fact of agency" refers exclusively to declarations made by the agent outside the courtroom. It is well settled that, when on the witness stand, the agent may testify what his principal told him to do, and by such testimony establish the fact of the agency. (citations omitted)

Moreover, it should be noted that the importance of exclusionary rules, such as the hearsay rule, is minimized in non-jury cases. See Wright and Miller, Evidence § 2412 p. 364.

4. During 1974, the Bank was authorized to collect and deliver securities and bonds in the Chicago area on behalf of Bartlett. Bartlett contends that as part of this oral agreement between it and the Bank, the bonds were to be checked for coupons, signatures, and legal opinions to assure their authenticity, and that for these services Schiller Park was reimbursed for its actual expenses and interest on any money advanced to the Bank in the process of clearing the bonds. Schiller Park does not contest this assertion, but expressly adopts it in its proposed findings of fact and conclusions of law.

handling securities, testified that he checked these 22 bonds for authenticity in only one minute.

Thereafter, Mr. Bucholz ordered that the pre-cut check be paid to the Bank in the amount of $105,135.55, which included payment in the amount of $66,904.44 for Osage bonds Nos. 200 through 213, and at this time acquired a security interest in the Osage bonds until the advance was repaid. National's instructions to Bradford directed that the $70,000 Osage bonds be "paired off" to the account of Tower Brokerage, Inc. ("Tower")[5], as a result the Osage bonds were delivered to Bradford's New York office. On July 8, 1974, Bradford effectuated the sale, the "pair-off" of the fourteen Osage bonds numbered 200–213 from National to Tower for the price of $69,009.44, which purchase price was advanced by Bradford. National Municipal made a profit of $2,100.00.

The bonds were stored in Bradford's vault through September, 1974, except that they were occasionally used as overnight collateral at Manufacturer's Hanover Bank or Chemical Bank in New York.

In October, 1974, Bradford discovered, upon receiving an inquiry from Plaza Bank & Trust Co., the paying agent on the Osage Bonds, that Osage bonds Nos. 200 through 213 were not signed by the Osage Authority or by an attesting clerk.

Bradford attempted to reclaim the unsigned bonds Nos. 200–213 on October 10, 1974, but both the Schiller Park Bank and Bartlett refused to accept Bradford's reclaim. Additionally, neither National or Tower have repaid the advance Bradford made to enable National to purchase the bonds.

The narrow question presented is who is to be held responsible for the unsigned bonds that Bradford has paid for and holds in its vault. The parties contend that the resolution of this question is dependent upon an analysis of Article 8 of the UCC, specifically § 8–306.

Section 8–306 provides in pertinent part that:

(2) A person by transferring a security to a purchaser for value warrants that

(a) his transfer is effective and rightful; and

(b) the security is genuine and has not been materially altered; and

(c) he knows of no fact which might impair the validity of the security.

(3) Where a security is delivered by an intermediary known to be entrusted with delivery of the security on behalf of another or with collection of a draft or other claim against such delivery, the intermediary by such delivery warrants only his own good faith and authority even though he has purchased or made advances against the claim to be collected against the delivery.

\* \* \* \* \* \*

(5) A broker gives to his customer and to the issuer and a purchaser the warranties provided in this section and has the rights and privileges of a purchaser under this section. The warranties of and in favor of the broker acting as an agent are in addition to applicable warranties given by and in favor of his customer.

As amended 1962.

Ill.Rev.Stat. Ch. 26 § 8–306 (1972).

The introduction to Ill.Rev.Stat. Ch. 26 § 8–301 et seq. (1972) notes that,

Underlying all the provisions of Article 8 is the philosophy that the duties and responsibilities of a party to a securities transaction are commensurate with his participation in the transaction and that the risk of loss is on the person who, under established commercial practice, was in the best position to prevent such loss.

Accordingly, Bradford contends that Bartlett acted as a "broker" in the Osage transaction and, accordingly, made the warran-

---

5. Tower was also a customer of Bradford. In May 30, 1974, the separate accounts of Tower and National became joint accounts. National guaranteed Tower's account and Tower guar- anteed National's account. In addition, National and Tower traded off of each other's stock inventory.

ties contained in subpart (2) of § 8–306. Bartlett contends that it acted only as an intermediary and, accordingly, is entitled to the protection from liability specified in subpart (3).

All parties agree that the Bank functioned as an "intermediary" in the transaction. However, Bradford maintains that the Bank, nevertheless, breached its warranty of good faith. Bartlett states that if it is found liable for warranting genuineness it is to be indemnified by the Bank, which orally agreed to check the signatures and form of the security.

The evidence submitted at trial on the issue of whether or not the Bank transferred signed securities to Bradford on July 5, 1974 is inconclusive. The testimony of Schiller Park's employee, Steven DiMeo, was that he individually checked each bond for signature in accordance with the bank's procedure, which took him approximately 15 minutes to complete; and that same day delivered signed Osage bonds to Bradford. This Court finds the testimony of Mr. DiMeo to be highly credible.

Since Bradford admits that their employee Martin Bucholz checked only the first bond, on which there was a signature, there is no evidence to refute Mr. DiMeo's testimony.

In support of its contention that Bradford received unsigned bonds from the Bank, and to refute defendant's contentions that the signed bonds were replaced by unsigned bonds while in plaintiff's possession, Bradford offered a deposition of a vice-president from Banco Popular de Puerto Rico, Theodore Cohen, who stated that Banco Popular had signed Osage bonds, and had had these bonds since January, 1974. Cohen was unable to, and did not, produce verification of this assertion.

However, this Court finds that, irrespective of the parties' conflicting contentions, plaintiff Bradford is not entitled to recover the purchase price of the Osage bonds.

Clearly, if the bonds were signed at the time they were transferred to Bradford, as Mr. DiMeo testified, neither the Bank nor Bartlett could be held responsible for the unsigned bonds now in Bradford's possession.

Even if it is assumed that the Schiller Park Bank did not transfer signed bonds, or in fact could not have transferred signed bonds because Banco Popular held the signed bonds, plaintiff still has no right to recover from either defendant.

■ First, it is this Court's opinion that the warranties specified in Section 8–306(2) run only between the transferee and his immediate transferor. *See, Ford v. Cannon*, 413 F.Supp. 1393 (M.D.Fla.1976); Ill. Rev.Stat. Ch. 26 § 8–306, comment.

■ Assuming that this is the Code's intention, Bradford's immediate transferee was Schiller Park Bank. And, all parties have agreed that the Bank acted only as an "intermediary" in the Osage transaction. As an intermediary, the Bank warranted only its good faith and authority, and not the genuineness of the bonds. See § 8–306(3), and comments thereto, and see, *Brannon v. First Nat'l Bank*, 137 Ga.App. 275, 223 S.E.2d 473 (Div. 3, 1976).

The bank did not breach its warranty of good faith as plaintiff contends. "Good faith" under the UCC is defined as "honesty in fact in the conduct or transaction concerned." Article 1 § 1–201(19). The bank has presented the testimony of its employee which indicates he checked all the bonds and found signatures upon all of the bonds transferred.

■ However, if the warranties in § 8–306 extend beyond the transferee's immediate transfer, in other words to Bartlett, plaintiff still may not recover the purchase price. Contrary to plaintiff's assertion Bartlett also functioned as an "intermediary" in the Osage transaction. The official comments to § 8–306 state that an intermediary is one who while possibly a "broker" delivers a security on a customer's instructions, either without charge or for a nominal handling charge, and who does not "buy a security from or sell a security to a customer." § 8–303. In the instant case, Bartlett neither bought the Osage bonds for

**6**

National's or its own account or from R. J. Allen and received only a 1% fee from National which was set by National itself.

National brought the Osage bonds from R. J. Allen and in exchange transferred McClain bonds and paid for the difference by a cash advance from Bradford. Moreover, Bartlett never took or had possession of the bonds in question. As an "intermediary" Bartlett merely warranted its "good faith" and authority. No evidence was introduced to the effect that Bartlett did *not* act with "honesty in fact in the conduct or transaction concerned." As the official comment explains, intermediaries "having no access to direct knowledge about the security, they cannot be held to warrant its genuineness or validity." Such is the case here, where Bartlett learned of the Osage bonds from R. J. Allen, who in turn received the bonds from the printer J. M. Hart & Co.

Furthermore, plaintiff is reminded that the Introduction to Ill.Rev.Stat. Ch. 26 § 8–101 et seq. specifically states that,

> ... the risk of loss is on the person who, under established commercial practice, was in the best position to prevent such loss.

In the instant case, Bradford was in the best position to prevent its loss at the time of transfer and prior to advancing the money on behalf of its customer, National.

For the above reasons, this Court finds that plaintiff may not recover the price of the Osage bonds Nos. 200 through 213.