ED DUGGAN, INC., Plaintiff–Appellee,

v.

NINTH DISTRICT PRODUCTION CREDIT ASSOCIATION, Successor to Mountain Plains Production Credit Association, Defendant–Appellant.

No. 88CA0138.

Colorado Court of Appeals, Div. III.

Jan. 11, 1990.

As Modified on Denial of Rehearing Feb. 15, 1990.

Certiorari Granted Aug. 27, 1990.

Wood, Herzog, Osborn & Bloom, P.C., Charles S. Bloom, Fort Collins, for plaintiff-appellee.

Hill, Hill and Manges, P.C., Alden V. Hill, Fort Collins, for defendant-appellant.

Opinion by Judge STERNBERG.

Ninth District Production Credit Association (Association) appeals from a judgment entered on a jury verdict in favor of Ed Duggan, Inc. We affirm.

For several years before 1982, the Association had provided a line of credit to the Norman Land & Livestock Company (Norman) for the operation of a farm and feedlot. It held a properly perfected security interest in Norman's equipment, inventory, and accounts receivable. Because Norman was losing money, in the fall of 1982, the Association decided to stop making further loans to Norman and to liquidate the business. A memorandum was prepared, dated September 17, 1982, in which the Associa-

tion and Norman agreed to a sale and liquidation of all of Norman's assets. Under that agreement, Norman could continue to purchase corn for the winding up, but all disbursements over $500 required the Association's prior approval.

Duggan had been a supplier of feed corn to Norman for many years. Evidence at the trial established that after the above agreement was signed, Duggan delivered several loads of corn on open account, some of which were paid for by sight drafts honored by the Association. However, at the time Norman ceased operation, and after part of the corn had been repossessed by Duggan, about $101,000 worth of corn had been delivered but not paid for.

Duggan brought suit against Norman, the Association, and a prospective buyer of the feedlot. Following dismissal by Duggan of the claims against the prospective buyer, a jury trial was held on the issue whether there was a contract, express or implied in fact or in law, between the Association and Duggan. The trial court rejected the Association's tendered theory of the case instruction and several others that would have permitted the jury to consider whether its perfected security interest under the Uniform Commercial Code, § 4-1-101, et seq., C.R.S. in Norman's inventory and accounts receivable prevailed over Duggan's claims to payment for the corn as an unsecured creditor.

The jury found for Duggan and against the Association on a theory of contract implied in law. This appeal followed.

## I.

The Association first contends that it was entitled to a directed verdict because it held a perfected security interest in Norman's assets that covered the corn and any accounts receivable from cattle owners who paid Norman on the basis of weight gain from the feeding of that corn. We disagree.

The record discloses that there was no dispute about the fact that the Association's security interest was properly perfected; rather, the question is whether that security interest entitles it to claim that it does not owe the cost of the corn to Duggan. The crux of the case, then, is whether the claim by Duggan of the Association's unjust enrichment by virtue of the corn supplied by Duggan prevails over the Association's status as a secured creditor with an admittedly properly perfected security interest. We hold that it does.

We find no Colorado authority directly on this point. The Association has directed our attention to *Peerless Packing Co. v. Malone & Hyde, Inc.*, 376 S.E.2d 161 (W.Va.1988). In that case, the appeals court upheld the trial court's granting of a directed verdict in favor of a secured creditor that had assumed all of the debtors' collateral and funds pursuant to a security agreement. That court held that, as a matter of law, the unsecured creditors could not maintain their action, because the security interest was governed by Article 9 of the Uniform Commercial Code. The court quoted with approval the language of *Evans Products Co. v. Jorgensen*, 245 Or. 362, 421 P.2d 978 (1966), stating: "[T]he purpose and effectiveness of the UCC would be substantially impaired if interests created in compliance with UCC procedure could be defeated by the application of the equitable doctrine of unjust enrichment."

The *Evans* case has also been cited for the proposition that: "A security interest created in compliance with the Code may not be defeated by application of the equitable doctrine of unjust enrichment." 79 C.J.S. Supp. *Secured Transactions* § 49 (1974).

For a similar holding, governed by Article 3 of the UCC, *see Brannon v. First National Bank*, 137 Ga.App. 275, 223 S.E.2d 473 (1976). *See also Central Washington Bank v. Mendelson–Zeller*, 113 Wash.2d 346, 779 P.2d 697 (1989) (an Article 9 security interest prevails over a creditor's equitable lien).

In contrast, there is recent authority that, under certain circumstances, an unjust enrichment claim will prevail over a properly perfected Article 9 security interest. *Producers Cotton Oil Co. v. Amstar Corp.*, 197 Cal.App.3d 638, 242 Cal.Rptr.

914 (1988); *Borg–Warner Acceptance Corp. v. Valentine Associates Ltd.*, 192 Ga.App. 123, 384 S.E.2d 223 (1989).

In *Producers Cotton Oil*, a buyer of farm products paid the costs of harvesting a sugar beet crop, but through a clerical error, used funds from the sale of the crops to pay the harvester instead of directing those funds to the secured creditor. The appeals court held that the facts satisfied the criteria for a contract implied in law, saying that: "[W]hen a party possessing a security interest in a crop and its proceeds has knowledge of and acquiesces in expenditures made which are *necessary* to the development of the crop, and ultimately benefits from the expenditures, a party who, through mistake, pays such costs without first obtaining subordination is entitled to recover." (emphasis in original).

In *Borg–Warner*, a company that floor-planned mobile homes was required to reimburse a company that had purchased retail installment contracts for the amount that had been paid by the purchaser of the installment contract for a mobile home which had been purchased by a customer under a sales contract that was subsequently rescinded. The floor-plan financer "was entitled to retain either the [mobile home] as inventory or the proceeds from the [mobile home] sale if it had been completed, but not both."

It is also to be noted, relative to "general principles of law and equity" in the UCC, that:

"Code sections do not 'occupy the equity field.' Rather, general equitable principles remain largely intact, for they are only rarely 'particularly displaced.' In a sense, then, they are the main occupants of the relevant field. This follows from their basic character. Unlike general legal principles, they do not merely supplement Code sections; their function is also to carve exceptions from or otherwise modify Code sections, and the courts have recognized as much."

J. White & R. Summers, *Uniform Commercial Code* § 5 (3d ed. 1988).

While recognizing the split of authority on this point, we are persuaded that Duggan's claim of unjust enrichment should prevail over the Association's status as a secured creditor.

There is ample evidence in the record to support the jury's conclusion that there were dealings between the Association and Duggan that were independent of the secured creditor status that the Association occupied with Norman. Hence, that finding is binding on appeal. *Broncucia v. McGee*, 173 Colo. 22, 475 P.2d 336 (1970).

Evidence was presented that Duggan was given a copy of the Association–Norman agreement of September 17 as evidence of the Association's authorization for Norman to continue to purchase corn. The Association was informed by Norman whenever a load of corn was ordered, and an Association representative was present at the feedlot on more than one occasion when corn was delivered. An Association representative conducted an inventory of feed on hand. The Association was directing that the feedlot remain open in hopes a proposed sale would be consummated. Norman was not permitted by the Association to retain or expend funds collected by the feedlot. It was the Association, not Norman, who was negotiating for that possible sale. And, the Association expended some additional funds paying the feedlot's bills after its loan commitment to Norman had already been used up.

■ The Association also claims that, pursuant to § 4–9–317, C.R.S., the UCC provides that the existence of a security interest does not impose contract or tort liability upon the secured party for the debtor's acts or omissions. While this is a correct statement of law, application of the doctrine of contracts implied in law serves to avoid the unjust enrichment of one party, and does not depend on the existence of a contract, either express or implied in fact. *See Martinez v. Continental Enterprises*, 730 P.2d 308 (Colo.1986). Since the jury found there was no express contract or contract implied in fact, the section of the UCC relied upon by the Association is inapposite.

In light of these conclusions, we hold that the Association's motion for directed verdict on its UCC claims was properly denied.

## II.

The Association next contends that the trial court erred in giving jury instructions which dealt with contracts implied in law. We disagree.

The principal instruction of which the Association complains is modeled on *CJI–Civ.2d* 30:31 (1980), and as framed by the trial court correctly lists the elements of a contract implied in law. *See Cablevision of Breckenridge, Inc. v. Tannhauser Condominium Ass'n*, 649 P.2d 1093 (Colo. 1982). Since a trial court may exercise sound discretion as to form and style in which instructions are given, *Montgomery Ward & Co. v. Kerns*, 172 Colo. 59, 470 P.2d 34 (1970), there was no error in the formulation of the instruction.

Nor do we agree with the Association that an instruction defining "benefit" as "any form of advantage" was improper. The wording used is identical to that of Restatement of Restitution § 1, comment b (1937), which has been quoted with approval in *Cablevision of Breckenridge, Inc. v. Tannhauser Condominium Ass'n, supra.* Thus, there was no error in its use.

## III.

The Association next contends that it was entitled to jury instructions on its theory of the case, namely that it had a security interest in the corn which outranked Duggan's interest as an unsecured creditor of the Norman feedlot. Again, we disagree.

While the Association correctly notes that a party is entitled to a jury instruction on a legal theory when that theory is supported by evidence, *Federal Insurance Co. v. Public Service Co.*, 194 Colo. 107, 570 P.2d 239 (1977), the trial court determined that the evidence presented in the case warranted submitting instructions on theories of express and implied contract between the Association and Duggan, not on the relationship between the Association and Norman. It is the responsibility of a trial court to decide the law applicable to the particular case, and the legal sufficiency of evidence in regard to a contested claim. *Bar 70 Enterprises, Inc. v. Tosco Corp.*, 703 P.2d 1297 (Colo. 1985).

Based on the evidence of the Association–Duggan relationship described above, we find no merit in the Association's claim that specific instructions on its security interest under the UCC should have been given.

## IV.

Finally, the Association asserts that the facts do not support the jury verdict finding the existence of a contract implied in law. Based on the evidence presented at trial, we reject this contention.

In particular, the Association points out that it was losing money on the Norman loan both at the time the decision was made to close the feedlot in September of 1982 and at the time it was finally closed in early 1983. However, although the exact amount was controverted, evidence shows that by virtue of the fact that the feedlot remained open for some months, using the corn delivered by Duggan, the amount of money lost by the Association decreased because of revenue generated from feeding cattle. This is a fact from which a reasonable jury could find that a "benefit" had been conferred upon the Association by Duggan, under circumstances in which it would be inequitable for the Association to retain that benefit. *See Cablevision of Breckenridge, Inc. v. Tannhauser Condominium Ass'n, supra.* This finding will therefore not be disturbed on appeal. *Broncucia v. McGee, supra.*

We have examined the Association's claim that errors were made in admitting evidence which prevented it from receiving a fair trial, and we find them to be without merit.

Judgment affirmed.

PLANK and MARQUEZ, JJ., concur.